# SMITH *v.* UNITED STATES

No. 91–1538.   Argued December 7, 1992—Decided March 8, 1993

Rehnquist, C. J., delivered the opinion of the Court, in which White, Blackmun, O'Connor, Scalia, Kennedy, Souter, and Thomas, JJ., joined. Stevens, J., filed a dissenting opinion, *post*, p. 205.

*David J. Bederman* argued the cause for petitioner. With him on the briefs were *Allen T. Murphy, Jr.,* and *David Gernant.*

*Christopher J. Wright* argued the cause for the United States. On the brief were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Mahoney,* and *Mark B. Stern.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

This case presents the question whether the Federal Tort Claims Act (FTCA), 28 U. S. C. §§ 1346(b), 1402(b), 2401(b), 2671–2680 (1988 ed. and Supp. II), applies to tortious acts or omissions occurring in Antarctica, a sovereignless region without civil tort law of its own.[1] We hold that it does not.

Petitioner Sandra Jean Smith is the widow of John Emmett Smith and the duly appointed representative of his es-

---

[1] Without indigenous human population and containing roughly one-tenth of the world's land mass, Antarctica is best described as "an entire continent of disputed territory." F. Auburn, Antarctic Law and Politics 1 (1982). Seven nations—Argentina, Australia, Chile, France, New Zealand, Norway, and the United Kingdom—presently assert formal claims to pie-shaped portions of the continent that total about 85 percent of its expanse. Boczek, The Soviet Union and the Antarctic Regime, 78 Am. J. Int'l L. 834, 840 (1984); Hayton, The Antarctic Settlement of 1959, 54 Am. J. Int'l L. 349 (1960). The United States does not recognize other nations' claims and does not itself assert a sovereign interest in Antarctica, although it maintains a basis for such a claim. Lissitzyn, The American Position on Outer Space and Antarctica, 53 Am. J. Int'l L. 126, 128 (1959). In any event, these sovereign claims have all been suspended by the terms of the Antarctic Treaty, concluded in 1959. Antarctic Treaty, Dec. 1, 1959, [1961] 12 U. S. T. 794, T. I. A. S. No. 4780. Article IV of the treaty states that no claim may be enforced, expanded, or compromised while the treaty is in force, *id.,* art. IV, 12 U. S. T., at 796, thus essentially freezing nations' sovereign claims as of the date of the treaty's execution.

tate.   At the time of his death, Smith worked as a carpenter at McMurdo Station on Ross Island, Antarctica, for a construction company under contract to the National Science Foundation, an agency of the United States.   Smith and two companions one day took a recreational hike to Castle Rock, located several miles outside of McMurdo Station.   On their return, they departed from the marked route to walk across a snow field in the direction of Scott Base, a New Zealand outpost not far from McMurdo Station.   After stopping for a snack, one of the three men took a step and suddenly dropped from sight.   Smith followed, and he, too, disappeared.   Both men had fallen into a crevasse.   Despite search and rescue efforts, Smith died from exposure and internal injuries suffered as a result of the fall.

Petitioner filed this wrongful-death action against the United States under the FTCA in the District Court for the District of Oregon, the district where she resides.   Petitioner alleged that the United States was negligent in failing to provide adequate warning of the dangers posed by crevasses in areas beyond the marked paths.   It is undisputed that petitioner's claim is based exclusively on acts or omissions occurring in Antarctica.   Upon the motion of the United States, the District Court dismissed petitioner's complaint for lack of subject-matter jurisdiction, 702 F. Supp. 1480 (1989), holding that her claim was barred by 28 U. S. C. § 2680(k), the foreign-country exception.   Section 2680(k) precludes the exercise of jurisdiction over "[a]ny claim arising in a foreign country."

The Court of Appeals affirmed, 953 F. 2d 1116 (CA9 1991). It noted that the term "foreign country" admits of multiple interpretations, and thus looked to the language and structure of the FTCA as a whole to determine whether Antarctica is a "foreign country" within the meaning of the statute. Adopting the analysis and conclusion of then-Judge Scalia, see *Beattie* v. *United States*, 244 U. S. App. D. C. 70, 85–109, 756 F. 2d 91, 106–130 (1984) (Scalia, J., dissenting), the Court

of Appeals ruled that the FTCA does not apply to claims arising in Antarctica. To hold otherwise, the Court of Appeals stated, would render two other provisions of the FTCA, 28 U. S. C. §§ 1402(b), 1346(b), nonsensical. The Court of Appeals held, in the alternative, that petitioner's suit would be barred even if Antarctica were not a "foreign country" for purposes of the FTCA. Because the FTCA was a limited relinquishment of the common-law immunity of the United States, the Court of Appeals concluded that the absence of any clear congressional intent to subject the United States to liability for claims arising in Antarctica precluded petitioner's suit. We granted certiorari to resolve a conflict between two Courts of Appeals,[2] 504 U. S. 984 (1992), and now affirm.

Petitioner argues that the scope of the foreign-country exception turns on whether the United States has recognized the legitimacy of another nation's sovereign claim over the foreign land. Otherwise, she contends, the land is not a "country" for purposes of the FTCA. Petitioner points out that the United States does not recognize the validity of other nations' claims to portions of Antarctica. She asserts, moreover, that this construction of the term "foreign country" is most consistent with the purpose underlying the foreign-country exception. According to petitioner, Congress enacted the foreign-country exception in order to insulate the United States from tort liability imposed pursuant to foreign law. Because Antarctica has no law of its own, petitioner claims that conventional choice-of-law rules control and require the application of Oregon law, the law of her domicil. Thus, petitioner concludes, the rationale for the foreign-country exception would not be compromised by the exercise of jurisdiction here, since the United States

---

[2] Cf. *Beattie* v. *United States*, 244 U. S. App. D. C. 70, 756 F. 2d 91 (1984) (holding that Antarctica is not a "foreign country" within the meaning of the FTCA).

would not be subject to liability under the law of a foreign nation.

Petitioner's argument for governmental liability here faces significant obstacles in addition to the foreign-country exception, but we turn first to the language of that proviso. It states that the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim arising in a foreign country." 28 U. S. C. § 2680(k). Though the FTCA offers no definition of "country," the commonsense meaning of the term undermines petitioner's attempt to equate it with "sovereign state." The first dictionary definition of "country" is simply "[a] region or tract of land." Webster's New International Dictionary 609 (2d ed. 1945). To be sure, this is not the only possible interpretation of the term, and it is therefore appropriate to examine other parts of the statute before making a final determination. But the ordinary meaning of the language itself, we think, includes Antarctica, even though it has no recognized government.

Our construction of the term "foreign country" draws support from the language of § 1346(b), "[t]he principal provision of the Federal Tort Claims Act." *Richards* v. *United States,* 369 U. S. 1, 6 (1962). That section waives the sovereign immunity of the United States for certain torts committed by federal employees "under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U. S. C. § 1346(b) (emphasis added). We have construed § 1346(b) in determining what law should apply in actions brought under the FTCA. See *Richards, supra.* But by its terms the section is more than a choice-of-law provision: It delineates the scope of the United States' waiver of sovereign immunity. If Antarctica were not a "foreign country," and for that reason included within the FTCA's coverage, § 1346(b) would instruct courts to look to the law of a place that has no law in order to determine the

liability of the United States—surely a bizarre result.[3]  Of course, if it were quite clear from the balance of the statute that governmental liability was intended for torts committed in Antarctica, then the failure of § 1346(b) to specify any governing law might be treated as a statutory gap that the courts could fill by decisional law.  But coupled with what seems to us the most natural interpretation of the foreign-country exception, this portion of § 1346(b) reinforces the conclusion that Antarctica is excluded from the coverage of the FTCA.

Section 1346(b) is not, however, the only FTCA provision that contradicts petitioner's interpretation of the foreign-country exception.  The statute's venue provision, § 1402(b), provides that claims under the FTCA may be brought "only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."  Because no federal judicial district encompasses Antarctica, petitioner's interpretation of the FTCA would lead to yet another anomalous result: The FTCA would establish jurisdiction for all tort claims against the United States arising in Antarctica, but no venue would exist unless the claimant happened to reside in the United States.[4]  As we observed in *Brunette*

---

[3] Nor can the law of the plaintiff's domicil, Oregon here, be substituted in FTCA actions based on torts committed in Antarctica.  "Congress has expressly stated that the Government's liability is to be determined by the application of a particular law, the law of the place where the act or omission occurred . . . ."  *Richards* v. *United States*, 369 U. S. 1, 9 (1962).  Petitioner does not contend that her cause of action is based on acts or omissions occurring in Oregon.

[4] The history of the FTCA reveals that Congress declined to enact earlier versions of the statute that would have differentiated between foreign and United States residents.  Those versions would have barred claims "arising in a foreign country *in behalf of an alien.*"  S. 2690, 76th Cong., 1st Sess., § 303(12) (1939) (emphasis added); H. R. 7236, 76th Cong., 1st Sess., § 303(12) (1939) (emphasis added).  At the suggestion of the Attorney General, the last five words of the proposed bills were dropped.  See Hearings on H. R. 5373 and H. R. 6463 before the House Committee on the Judiciary, 77th Cong., 2d Sess., 29, 35, 66 (1942).  As we observed in

*Machine Works, Ltd.* v. *Kockum Industries, Inc.*, 406 U. S. 706, 710, n. 8 (1972), "Congress does not in general intend to create venue gaps, which take away with one hand what Congress has given by way of jurisdictional grant with the other." Thus, in construing the FTCA, it is "reasonable to prefer the construction that avoids leaving such a gap," *ibid.*, especially when that construction comports with the usual meaning of a disputed term.

Our decisions interpreting the FTCA contain varying statements as to how it should be construed. See, *e. g.*, *United States* v. *Yellow Cab Co.*, 340 U. S. 543, 547 (1951); *Dalehite* v. *United States*, 346 U. S. 15, 31 (1953); *United States* v. *Orleans*, 425 U. S. 807, 813 (1976); *Kosak* v. *United States*, 465 U. S. 848, 853, n. 9 (1984). See also *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 34 (1992). A recent statement of this sort, and the one to which we now adhere, is found in *United States* v. *Kubrick*, 444 U. S. 111, 117–118 (1979) (citations omitted): "We should also have in mind that the Act waives the immunity of the United States and that . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended. Neither, however, should we assume the authority to narrow the waiver that Congress intended." Reading the foreign-country exception to the FTCA to exclude torts committed in Antarctica accords with this canon of construction.

Lastly, the presumption against extraterritorial application of United States statutes requires that any lingering doubt regarding the reach of the FTCA be resolved against

*United States* v. *Spelar*, 338 U. S. 217, 220 (1949), "[t]he superseded draft had made the waiver of the Government's traditional immunity turn upon the fortuitous circumstance of the injured party's citizenship." The amended version, however, "identified the coverage of the Act with the scope of United States sovereignty." *Id.*, at 220–221. At least insofar as Antarctica is concerned, petitioner's interpretation of the FTCA would effectively resurrect the scheme rejected by Congress; it would deny relief to foreign residents in circumstances where United States residents could recover.

its encompassing torts committed in Antarctica. "It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.'" *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 248 (1991) (quoting *Foley Bros., Inc.* v. *Filardo*, 336 U. S. 281, 285 (1949)). In applying this principle, "[w]e assume that Congress legislates against the backdrop of the presumption against extraterritoriality." *Arabian American Oil Co., supra,* at 248; accord, *e. g., Argentine Republic* v. *Amerada Hess Shipping Corp.*, 488 U. S. 428, 440 (1989) ("When it desires to do so, Congress knows how to place the high seas within the jurisdictional reach of a statute"). The applicability of the presumption is not defeated here just because the FTCA specifically addresses the issue of extraterritorial application in the foreign-country exception. To the contrary, as we stated in *United States* v. *Spelar*, 338 U. S. 217, 222 (1949), "[t]hat presumption, far from being overcome here, is doubly fortified by the language of this statute and the legislative purpose underlying it." Petitioner does not assert, nor could she, that there is clear evidence of congressional intent to apply the FTCA to claims arising in Antarctica.[5]

For all of these reasons, we hold that the FTCA's waiver of sovereign immunity does not apply to tort claims arising in Antarctica. Some of these reasons are based on the language and structure of the statute itself; others are based on presumptions as to extraterritorial application of Acts of Congress and as to waivers of sovereign immunity. We

---

[5] Petitioner instead argues that the presumption against extraterritoriality applies only if it serves to avoid "'unintended clashes between our laws and those of other nations which could result in international discord.'" Brief for Petitioner 16 (quoting *EEOC* v. *Arabian American Oil Co.*, 499 U. S., at 248). But the presumption is rooted in a number of considerations, not the least of which is the commonsense notion that Congress generally legislates with domestic concerns in mind.

think these norms of statutory construction have quite likely led us to the same conclusion that the 79th Congress would have reached had it expressly considered the question we now decide: It would not have included a desolate and extraordinarily dangerous land such as Antarctica within the scope of the FTCA. The judgment of the Court of Appeals is therefore

*Affirmed.*

JUSTICE STEVENS, dissenting.

In my opinion the Court's decision to grant certiorari in this case was a wise exercise of its discretion. The question whether the United States should be held responsible for the tortious conduct of its agents in the vast "sovereignless region" of Antarctica, *ante*, at 198, is profoundly important, not only because its answer identifies the character of our concern about ordinary justice, but also because Antarctica is just one of three vast sovereignless places where the negligence of federal agents may cause death or physical injury. The negligence that is alleged in this case will surely have its parallels in outer space as our astronauts continue their explorations of ungoverned regions far beyond the jurisdictional boundaries that were familiar to the Congress that enacted the Federal Tort Claims Act (FTCA) in 1946. Moreover, our jurisprudence relating to negligence of federal agents on the sovereignless high seas points unerringly to the correct disposition of this case. Unfortunately, the Court has ignored that jurisprudence in its parsimonious construction of the FTCA's "sweeping" waiver of sovereign immunity.[1]

In theory the territorial limits on the consent to sue the United States for the torts of its agents might be defined in four ways: (1) there is no such limit; (2) territory subject to

---

[1] "The Federal Tort Claims Act waives the Government's immunity from suit in sweeping language." *United States* v. *Yellow Cab Co.*, 340 U. S. 543, 547 (1951).

the jurisdiction of a foreign country is the only exclusion; (3) it also excludes sovereignless land areas such as Antarctica, but it includes the high seas and outer space; or (4) it has an "exclusive domestic focus" that applies "only within the territorial jurisdiction of the United States."[2] The "foreign country" exclusion in 28 U. S. C. § 2680(k)[3] unquestionably eliminates the first possibility. In my opinion, the second is compelled by the text of the Act.[4] The third possibility is not expressly rejected by the Court, but the reasoning in its terse opinion seems more consistent with the Government's unambiguous adoption of the fourth, and narrowest, interpretation. I shall therefore first explain why the text of the FTCA unquestionably requires rejection of the Government's submission.

## I

The FTCA includes both a broad grant of jurisdiction to the federal courts in § 1346(b)[5] and a broad waiver of sover-

---

[2] See Brief for United States 16, 21–22.

[3] "The provisions of this chapter and section 1346(b) of this title shall not apply to—

.     .     .     .     .

"(k) Any claim arising in a foreign country." 28 U. S. C. § 2680(k).

[4] In short, I agree with most of the analysis in Judge Fletcher's dissenting opinion in this case and Judge Wilkey's opinion for the Court of Appeals for the District of Columbia Circuit in *Beattie* v. *United States,* 244 U. S. App. D. C. 70, 756 F. 2d 91 (1984). Indeed, I am persuaded that the 79th Congress would have viewed torts committed by federal agents in "desolate and extraordinarily dangerous" lands as falling squarely within the central purpose of the FTCA. *Ante,* at 205.

[5] Title 28 U. S. C. § 1346(b) provides:

"Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the

eign immunity in § 2674.[6]  Neither of these sections identifies any territorial limit on the coverage of the Act.  That Congress intended and understood the broad language of those two provisions to extend beyond the territory of the United States is demonstrated by its enactment of two express exceptions from that coverage that would have been unnecessary if the initial grant of jurisdiction and waiver of immunity had been as narrow as the Government contends. One of those, of course, is the "foreign country" exclusion in § 2680(k).  See n. 6, *supra*.  The other is the exclusion in § 2680(d) for claims asserted under the Suits in Admiralty Act or the Public Vessels Act.[7]  Without that exclusion, a party with a claim against the United States cognizable under either of those venerable statutes would have had the right to elect the pre-existing remedy or the newly enacted FTCA remedy.  Quite obviously that exclusion would have been unnecessary if the FTCA waiver did not extend to the sovereignless expanses of the high seas.

Indeed, it was the enactment of the FTCA in 1946 that first subjected the United States to liability for maritime negligence claims that could not be maintained under either the Suits in Admiralty Act or the Public Vessels Act,[8] in particular, claims arising from death or injury on the high seas.

---

United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

[6] Section 2674 provides, in pertinent part:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

[7] Section 2680(d) excludes from the coverage of the FTCA "[a]ny claim for which a remedy is provided by sections 741–752, 781–790 of Title 46, relating to claims or suits in admiralty against the United States."

[8] See *United States* v. *United Continental Tuna Corp.*, 425 U. S. 164, 172 (1976) ("Maritime tort claims deemed beyond the reach of both Acts could be brought only on the law side of the district courts under the Federal Tort Claims Act").

As enacted in 1920, the Death on the High Seas Act (DOHSA) provided a remedy against private parties but contained no waiver of sovereign immunity.[9] That changed with the enactment of the FTCA, which waived the sovereign immunity of the United States for claims arising on the high seas under the DOHSA and the general maritime law. See, *e. g., United States* v. *Gavagan,* 280 F. 2d 319, 321 (CA5 1960) (holding United States liable, under the FTCA and the DOHSA, for death resulting from negligent rescue efforts on the high seas), cert. denied, 364 U. S. 933 (1961); *Blumenthal* v. *United States,* 189 F. Supp. 439, 446–447 (ED Pa. 1960) ("In the same manner as a private person is liable under the Death on the High Seas Act, so, too, is the Government under the Federal Tort Claims Act"), aff'd, 306 F. 2d 16 (CA3 1962); *Kunkel* v. *United States,* 140 F. Supp. 591, 594 (SD Cal. 1956) (same); *Moran* v. *United States,* 102 F. Supp. 275 (Conn. 1951) (holding that the FTCA waived the sovereign immunity of the United States for claims arising from both personal injury and death on the high seas). See also *McCormick* v. *United States,* 680 F. 2d 345, 349 (CA5 1982) (citing *Moran* with approval); *Roberts* v. *United States,* 498 F. 2d 520, 525–526 (CA9 1974) (noting that prior to 1960 amendments to Suits in Admiralty Act, FTCA waived sovereign immunity for claims under the general maritime law and the DOHSA).

In 1960, Congress amended the Suits in Admiralty Act so as to bring *all* maritime torts asserted against the United States, including those arising under the DOHSA, within the purview of the Suits in Admiralty Act and thus outside the waiver of sovereign immunity in the FTCA. See *United States* v. *United Continental Tuna Corp.,* 425 U. S. 164, 176, n. 14 (1976). There can be no disputing the fact, however, that at the time it was enacted, the FTCA waiver extended to the sovereignless reaches of the high seas. Since the geographic scope of that waiver has never been amended, the

---

[9] Pub. L. 69–165, 41 Stat. 537, codified at 46 U. S. C. App. § 761 *et seq.*

Government's submission that it is confined to territory under the jurisdiction of the United States is simply untenable.

That the 79th Congress intended the waiver of sovereign immunity in the FTCA to extend to the high seas does not, of course, answer the question whether that waiver extends to the sovereignless region of Antarctica. It does, however, undermine one premise of the Court's analysis: that the presumption against the extraterritorial application of federal statutes supports its narrow construction of the geographic reach of the FTCA. As the Court itself acknowledges, see *ante*, at 204, that presumption operates "unless a contrary intent appears." Here, the contrary intent is unmistakable. The same Congress that enacted the "foreign country" exception to the broad waiver of sovereign immunity in § 2674 subjected the United States to claims for wrongful death and injury arising well beyond the territorial jurisdiction of the United States. The presumption against extraterritorial application of federal statutes simply has no bearing on this case.

## II

The Government, therefore, may not prevail unless Antarctica is a "foreign country" within the meaning of the exception in subsection (k). Properly, in my view, the Court inquires as to how we are to construe this exception to the FTCA's waiver of sovereign immunity. *Ante*, at 203. Instead of answering that question, however, the Court cites a nebulous statement in *United States* v. *Kubrick*, 444 U. S. 111, 117–118 (1979), and simply asserts that construing the foreign-country exception so as to deny recovery to this petitioner somehow accords with congressional intent. *Ante*, at 203.

I had thought that canons of statutory construction were tools to be used to *divine* congressional intent, not empty phrases used to *ratify* whatever result is desired in a particular case. In any event, I would answer the question that

the Court poses, but then ignores. And as I read our cases, the answer is clear: Exceptions to the "'sweeping'" waiver of sovereign immunity in the FTCA should be, and have been, "narrowly construed." *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 34 (1992) (quoting *United States* v. *Yellow Cab Co.*, 340 U. S. 543, 547 (1951)).[10] Accordingly, given a choice between two acceptable interpretations of the term "country"—it may designate either a sovereign nation or an expanse of land—it is our duty to adopt the former.

Even without that rule of construction, we should favor the interpretation of the term that the Court has previously endorsed. Referring specifically to the term as used in the FTCA, we stated: "We know of no more accurate phrase in common English usage than 'foreign country' to denote territory subject to the sovereignty of another nation." *United States* v. *Spelar*, 338 U. S. 217, 219 (1949). That interpretation is consistent with a statutory scheme that imposes tort liability on the Government "in the same manner and to the same extent as a private individual under like circumstances," see n. 6, *supra*. As we explained in *Spelar:* "[T]hough Congress was ready to lay aside a great portion of the sovereign's ancient and unquestioned immunity from suit, it was unwilling to subject the United States to liabilities depending upon the laws of a foreign power." 338 U. S., at 221. Thus, the narrow interpretation of the term "for-

---

[10] See also *Block* v. *Neal*, 460 U. S. 289, 298 (1983), and *United States* v. *Aetna Casualty & Surety Co.*, 338 U. S. 366, 383 (1949). As we stated in the latter:

"In argument before a number of District Courts and Courts of Appeals, the Government relied upon the doctrine that statutes waiving sovereign immunity must be strictly construed. We think that the congressional attitude in passing the Tort Claims Act is more accurately reflected by Judge Cardozo's statement . . . : 'The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced.'" *Ibid.* (quoting *Anderson* v. *Hayes Construction Co.*, 243 N. Y. 140, 147, 153 N. E. 28, 29–30 (1926)).

eign country" is precisely tailored to make the scope of the subsection (k) exception coextensive with its justification.

### III

The Court seeks to buttress its interpretation of the "foreign country" exception by returning to the language of the jurisdictional grant in § 1346(b). As I have noted, federal courts have jurisdiction of civil claims against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[11] Emphasizing the last dozen words, the Court essentially argues that Antarctica is "a place that has no law" and therefore it would be "bizarre" to predicate federal liability on its governing law. *Ante*, at 202.[12]

Although the words the Court has italicized indicate that Congress may not have actually thought about sovereignless regions, they surely do not support the Court's conclusion.

---

[11] The Court inaccurately refers to the jurisdictional grant as the section that "waives the sovereign immunity of the United States," *ante*, at 201. It is actually § 2674 that waives immunity from liability by simply providing: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." See n. 6, *supra*. The Court does not quote § 2674.

[12] Apparently the Court is assuming that private contracts made in Antarctica are unenforceable and that there is no redress for torts committed by private parties in sovereignless regions. Fortunately our legal system is not that primitive. The statutory reference to "the law of the place where the act or omission occurred" was unquestionably intended to identify the substantive law that would apply to a comparable act or omission by a private party at that place. As long as private conduct is constrained by rules of law, and it certainly is in Antarctica, see *infra*, at 212–213, there is a governing "law of the place" within the meaning of the FTCA.

Those words, in conjunction with § 2674, require an answer to the question whether a private defendant, in like circumstances, would be liable to the complainant. The Court fails even to ask that question, possibly because it is so obvious that petitioner could maintain a cause of action against a private party whose negligence caused her husband's death in Antarctica. It is simply wrong to suggest, as the Court does, that Antarctica is "a place that has no law," *ante*, at 201.[13]

The relevant substantive law in this case is the law of the State of Oregon, where petitioner resides. As was well settled at English common law before our Republic was founded, a nation's personal sovereignty over its own citizens may support the exercise of civil jurisdiction in transitory actions arising in places not subject to any sovereign. *Mostyn* v. *Fabrigas*, 98 Eng. Rep. 1021, 1032 (K. B. 1774). See also *Dutton* v. *Howell*, 1 Eng. Rep. 17, 21 (H. L. 1693). This doctrine of personal sovereignty is well recognized in our cases. As Justice Holmes explained in *American Banana Co.* v. *United Fruit Co.*, 213 U. S. 347 (1909):

> "No doubt in regions subject to no sovereign, like the high seas, or to no law that civilized countries would recognize as adequate, such [civilized nations] may treat some relations between their citizens as governed by their own law, and keep to some extent the old notion of personal sovereignty alive." *Id.*, at 355–356.

---

[13] Indeed, it borders on the absurd to suggest that Antarctica is governed by nothing more than the law of the jungle. The United States exercises both criminal jurisdiction, see 18 U. S. C. § 7(7), and taxing jurisdiction, see 26 U. S. C. § 863(d)(2)(A), over the approximately 2,500 Americans that live and work in and around Antarctica each year. See National Science Foundation, Facts About the U. S. Antarctic Program 1 (July 1990). The National Science Foundation operates three year-round stations in Antarctica, the largest of which is composed of 85 buildings and has a harbor, landing strips on sea ice and shelf ice, and a helicopter pad. *Ibid.* Transportation to and from New Zealand is frequent during the summer months. *Id.*, at 2.

Justice Holmes was referring to the assertion of extraterritorial jurisdiction by the United States rather than an individual State, but it is clear that the States also have ample power to exercise legislative jurisdiction over the conduct of their own citizens abroad or on the high seas. As we explained in *Skiriotes* v. *Florida*, 313 U. S. 69 (1941):

> "If the United States may control the conduct of its citizens upon the high seas, we see no reason why the State of Florida may not likewise govern the conduct of its citizens upon the high seas with respect to matters in which the State has a legitimate interest and where there is no conflict with acts of Congress." *Id.*, at 77.[14]

Surely the State of Oregon, the forum State, has a substantial interest in applying its civil tort law to a case involving the allegedly wrongful death of the spouse of one of its residents. Certainly no other State has an interest in applying its law to these facts. Moreover, application of Oregon's substantive law would in no way conflict with an Act of Congress because Congress has expressly subjected the United States to the laws of the various States for torts committed by the United States and its agents. It is thus perfectly clear that were the defendant in this case a private party, there would be law to apply to determine that party's liability to petitioner. Given the plain language of § 2674, I see no basis for the Court's refusal to follow the statutory command and hold the United States "liable . . . in the same manner and to the same extent as a private individual under like circumstances."

---

[14] Again, as Justice Holmes explained:

"[T]he bare fact of the parties being outside the territory [of the United States] in a place belonging to no other sovereign would not limit the authority of the State, as accepted by civilized theory. No one doubts the power of England or France to govern their own ships upon the high seas." *The Hamilton*, 207 U. S. 398, 403 (1907).

## IV

Petitioner's action was filed "in the judicial district where the plaintiff resides," as § 1402(b) authorizes; there is, therefore, no objection to venue in this case. Because that provision would not provide a forum for a comparable action brought by a nonresident alien, the statute contains an omission that is no stranger to our law. In our opinion in *Brunette Machine Works, Ltd.* v. *Kockum Industries, Inc.*, 406 U. S. 706, 710, n. 8 (1972), we identified examples of "cases in which the federal courts have jurisdiction but there is no district in which venue is proper" and stated that "in construing *venue statutes* it is reasonable to prefer the construction that avoids leaving such a gap." (Emphasis added.) Neither in that case nor in any other did we suggest that a venue gap should be avoided by adopting a narrow construction of either a jurisdictional grant or the scope of a federal cause of action. Yet that is the Court's perverse solution to the narrow venue gap in the FTCA.

Because a hypothetical handful of nonresident aliens may have no forum in which to seek relief for torts committed by federal agents in outer space or in Antarctica, the Court decides that the scope of the remedy itself should be narrowly construed. This anomalous conclusion surely derives no support whatsoever from the basic decision to include aliens as well as citizens within the protection of the statute, particularly since the overwhelming majority of aliens who may have occasion to invoke the FTCA are surely residents. As Judge Fletcher accurately observed in her dissenting opinion in the Court of Appeals:

> "Those who have no problem with venue should not be foreclosed from bringing suit simply because others cannot, particularly with respect to a statute such as the FTCA the primary purpose of which, as we have seen, was to expand the jurisdiction of the federal courts." 953 F. 2d 1116, 1122 (CA9 1991).

At most, the imperfections in the statute indicate that in 1946 the 79th Congress did not specifically consider the likelihood of negligence actions arising in outer space or in a sovereignless territory such as Antarctica. In view of the fact that it did authorize actions against the United States arising out of negligence on the high seas, see *supra*, at 207–209, I am bewildered by the Court's speculation that if it had expressly considered the equally dangerous area at issue in this case, it would have distinguished between the two. *Ante*, at 204–205. The claim asserted in this case is entirely consistent with the central purpose of the entire Act.

Indeed, given that the choice is between imposing individual liability on federal agents for torts committed in the course of their employment, on the one hand, or holding their employer responsible, on the other hand, the amendment to the FTCA adopted by Congress in 1988 sheds more light on the issue presented in this case than the Court's unfounded speculation about congressional intent. The congressional findings explaining the decision to immunize federal employees from personal liability for negligence in the performance of their duties indicate that Congress recognizes both the practical value and the justice of a generous interpretation of the FTCA.[15] Moreover, those findings are thoroughly

---

[15] In enacting the Federal Employees Liability Reform and Tort Compensation Act of 1988, the stated purpose of which was "to protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States," §2(b), 102 Stat. 4564, 28 U. S. C. §2671 note, Congress made the following findings:

"(1) For more than 40 years the Federal Tort Claims Act has been the legal mechanism for compensating persons injured by negligent or wrongful acts of Federal employees committed within the scope of their employment.

"(2) The United States, through the Federal Tort Claims Act, is responsible to injured persons for the common law torts of its employees in the same manner in which the common law historically has recognized the

consistent with the interpretative approach of the unusually distinguished panel of Circuit Judges who, shortly after the FTCA was passed, wrote:

> "When after many years of discussion and debate Congress has at length established a general policy of governmental generosity toward tort claimants, it would seem that that policy should not be set aside or hampered by a niggardly construction based on formal rules made obsolete by the very purpose of the Act itself. Particularly should this be true as to the broad terms of coverage employed in the basic grant of liability itself." *Spelar* v. *United States*, 171 F. 2d 208, 209 (CA2 1948).[16]

The wisdom that prompted the Court's grant of certiorari is not reflected in its interpretation of the 1946 Act. Rather, it reflects a vision that would exclude electronic eavesdropping from the coverage of the Fourth Amendment and satellites from the coverage of the Commerce Clause. The international community includes sovereignless places but no

---

responsibility of an employer for torts committed by its employees within the scope of their employment.

"(3) Because Federal employees for many years have been protected from personal common law tort liability by a broad based immunity, the Federal Tort Claims Act has served as the sole means for compensating persons injured by the tortious conduct of Federal employees.

"(4) Recent judicial decisions, and particularly the decision of the United States Supreme Court in Westfall v. Erwin, have seriously eroded the common law tort immunity previously available to Federal employees.

"(5) This erosion of immunity of Federal employees from common law tort liability has created an immediate crisis involving the prospect of personal liability and the threat of protracted personal tort litigation for the entire Federal workforce.

"(6) The prospect of such liability will seriously undermine the morale and well being of Federal employees, impede the ability of agencies to carry out their missions, and diminish the vitality of the Federal Tort Claims Act as the proper remedy for Federal employees torts." § 2(a), 102 Stat. 4563, 28 U. S. C. § 2671 note.

[16] The members of the panel were Learned Hand, Chief Judge, and Augustus N. Hand and Charles E. Clark, Circuit Judges.

places where there is no rule of law. Majestic legislation like the Federal Tort Claims Act should be read with the vision of the judge, enlightened by an interest in justice, not through the opaque green eyeshade of the cloistered bookkeeper. As President Lincoln observed in his first State of the Union Message:

> "It is as much the duty of Government to render prompt justice against itself, in favor of citizens, as it is to administer the same between private individuals." [17]

I respectfully dissent.

---

[17] Cong. Globe, 37th Cong., 2d Sess., App. 2 (1861).