David **SMITH**, Roy Lyons, Richard Brohman, Jimmie Dean, Jr., Mark Novitsky, Michael Boyce, Timothy Shea, and Thomas Casey, Plaintiffs,

v.

**RAYTHEON COMPANY,** Defendant.

No. CIV.A. 02–12397–JLT.

United States District Court,
D. Massachusetts.

Jan. 5, 2004.

■■■■■■■■■■■■■■■■

Gregg D. Adler Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C., Hartford, CT, Peter Goselin, Hartford, CT, Ira Sills Segal, Roitman & Coleman, Boston, MA, for David Smith, Jimmie Dean, Jr., Mark Novitsky, Michael Boyce, Richard Brochman, Roy Lyons, Thomas F. Casey, Timothy J. Shea, Plaintiffs.

Stephen S. Churchill Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, James F. Kavanaugh, Jr. Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, for Raytheon Company, Defendant.

## MEMORANDUM

TAURO, District Judge.

This case involves a claim for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA").[1] Plaintiffs claim that section 207(a) of the FLSA ("section 207(a)") required Raytheon Company ("Defendant") to pay them overtime for work that they performed in Antarctica. Defendant, however, maintains that, because section 213(f) of the FLSA ("section 213(f)") states that the statute does not apply to work performed in a "foreign country," and because Antarctica is a "foreign country" within the meaning of section 213(f), it was not required to pay Plaintiffs overtime for the work that they performed in Antarctica.

Presently before this court is Defendant's motion to dismiss.

## Background

Plaintiffs have alleged the following facts: The National Science Foundation ("NSF"), which is an agency of the Executive Branch of the United States, oversees the United States Antarctic Program ("Antarctic Program").[2] Pursuant to the Antarctic Program, the NSF annually deploys approximately 3,500 scientists and support personnel to Antarctica and its surrounding seas to facilitate research in a variety of disciplines, including atmospheric chemistry, biology, and glaciology.[3]

In or about 1999, the NSF entered into a ten-year, $1.12 billion contract with Defendant. According to that contract, Defendant was to provide both full-time and seasonal workers to perform the basic support services, such as fire protection, waste management, and construction, that the Antarctic Program requires.[4] Defendant hired Plaintiffs to perform, and each Plaintiff did perform, one or more basic support services for the NSF in Antarctica.[5]

In performing the basic support services, Plaintiffs regularly worked in excess of forty hours per week.[6] Defendant, however, did not compensate Plaintiffs at a rate of one and one-half times their regular hourly rate for the hours that they worked in excess of forty hours per week.[7]

## Discussion

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that dismissal is appropriate where a party "fail[s] to state a claim upon which relief can be grant-

1. 29 U.S.C. §§ 201–219.

2. Compl. ¶¶ 21–22.

3. *Id.*

4. *Id.* ¶¶ 22–23.

5. *Id.* ¶ 24.

6. *Id.* ¶ 35.

7. *Id.* ¶ 36.

ed." [8]  A claim should be dismissed pursuant to Rule 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " [9]  In considering a Rule 12(b)(6) motion to dismiss, "a court should not decide questions of fact." [10]  Rather, it "must view the facts presented in the pleadings and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." [11]

Yet, "Rule 12(b)(6) is not entirely a toothless tiger." [12]  That is, its "minimal requirements are not tantamount to nonexistent requirements.  The threshold may be low, but it is real—and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation." [13]

Plaintiffs claim that, pursuant to section 207(a), Defendant was required to compensate them at a rate higher than their regular hourly rate for the hours that they worked in Antarctica in excess of forty hours per week.  Defendant disagrees.  In support of its position, Defendant relies on section 213(f), which states that the FLSA's overtime rate requirement does not apply to work performed in a "foreign country."  Defendant reasons that Antarctica is a "foreign country" within the meaning of section 213(f), and therefore, that Defendant was not required to pay Plaintiffs in accordance with the FLSA's overtime rate requirement.

According to section 207(a), an employer must pay an employee "at a rate not less than one and one-half times the regular rate at which he is employed" for the hours the employee works in excess of forty hours per week. [14]  Section 213(f), however, makes it clear that the statute's overtime rate requirement has certain geographical limits:

> The provisions of sections 206, *207*, 211, and 212 ... shall not apply with respect to any employee whose services during the workweek are performed in a workplace within a *foreign country* or within territory under the jurisdiction of the United States other than the following: a State of the United States;  the District of Columbia;  Puerto Rico;  the Virgin Islands;  outer Continental Shelf lands defined in the Outer Continental Shelf Lands Act ...;  American Samoa;  Guam;  Wake Island;  Eniwetok Atoll;  Kwajalein Atoll;  and Johnston Island. [15]

Thus, if Antarctica is a "foreign country" within the meaning of section 213(f), then section 207(a)'s overtime rate requirement does not apply to work performed there, and Plaintiffs' claim must fail.

■  This court concludes that Antarctica is a "foreign country" within the meaning of section 213(f).  There can be no disagreement over the proposition that Antarctica is "foreign" to the United States. [16]  And, the Supreme Court has

---

**8.**  Fed.R.Civ.P. 12(b)(6).

**9.**  *Roeder v. Alpha Indus. Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**10.**  *Id.*

**11.**  *Hathaway v. Stone*, 687 F.Supp. 708, 710 (D.Mass.1988).

**12.**  *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir.1989).

**13.**  *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

**14.**  29 U.S.C. § 207(a).

**15.**  29 U.S.C. § 213(f) (emphasis added).

**16.**  *See Smith v. United States*, 507 U.S. 197, 198 n. 1, 113 S.Ct. 1178, 122 L.Ed.2d 548

broadly defined the word "country" within the term "foreign country" to mean "[a] region or tract of land."[17] Antarctica is certainly "[a] region or tract of land."[18] It, therefore, is not necessary to look any further than the ordinary, commonsense meaning of the language of section 213(f) to reach the conclusion that Antarctica is a "foreign country" within the meaning of that section.

This court's construction of the term "foreign country" as including Antarctica is buttressed by other aspects of the FLSA. The structure of the FLSA reinforces the conclusion that its overtime rate requirement was not intended to apply to work performed in Antarctica. Section 213(f) divides the world into two categories: first, foreign countries, and second, territories under the jurisdiction of the United States. With the exception of those territories that are expressly listed in section 213(f), all places in both categories are excluded from the coverage of the FLSA's overtime rate requirement. One must assume that, in enacting section 213(f), Congress did not intend the section's list of covered territories to serve merely as a small number of illustrative examples of the many locations covered by the statute's overtime rate requirement. Rather, one must assume that Congress

envisioned that the list of covered territories in section 213(f), plus any additional locations that are expressly identified as covered elsewhere in the FLSA (such as the area on an American vessel),[19] would be comprehensive. It, thus, is reasonable to conclude that the FLSA's overtime rate requirement applies only to those locations that the statute expressly identifies as covered. And, nowhere in the FLSA is Antarctica so identified.

The legislative history of section 213(f) also supports the conclusion that Antarctica is beyond the geographical reach of the FLSA's overtime rate requirement. Congress added section 213(f) as an amendment to the FLSA in 1957 to clarify the statute's geographical scope.[20] Congress was concerned that an expansive international application of the FLSA might "raise difficult questions of sovereignty and offend[ ] the political sensitivities of ... foreign governments ...."[21] And, "[a]side from [raising] delicate questions of international relations," Congress feared that, without a definitive statement of the FLSA's geographical reach, "[p]rolonged and costly litigation would probably be necessary to determine whether the [FLSA] does or does not apply in a given area."[22] Congress, therefore, felt that it

(1993) (noting that "[t]he United States does not recognize other nations' claims and does not itself assert a sovereign interest in Antarctica").

17. *Id.* at 201, 113 S.Ct. 1178 (quoting Webster's New International Dictionary 609) (2d ed.1945) (declaring that the term "foreign country," as it appears in the Federal Tort Claims Act ("FTCA"), includes Antarctica). To be sure, in *Smith*, the Court interpreted the word "country" within the term "foreign country" as it appears in the FTCA, and not the FLSA. *See id.* Nevertheless, the Court's analysis applies with equal force in this case. After all, the ordinary meaning of the word

"country" does not depend on the context in which it appears.

18. *Id.*

19. Section 213(a)(12) provides that the overtime rate requirement applies to "any employee employed as a seaman on ... an American vessel." 29 U.S.C. § 213(a)(12).

20. *See* S.Rep. No. 85-987 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1756-58.

21. *Id.* at 1757.

22. *Id.*

was "desirable and necessary [to] settle[ ] the question as to the geographic limitation of the [FLSA]'s application." [23] Pursuant to that end, Congress enacted section 213(f), which, among other things, limits the coverage of the FLSA's overtime rate requirement to employees who perform work within one of the section's specifically identified territories. Of course, the FLSA's overtime rate requirement also applies to work performed in those locations that are expressly identified as covered elsewhere in the statute. [24]

In view of this legislative history, Congress's intent in enacting section 213(f) would be severely undermined if this court were to hold that the FLSA's overtime rate requirement applies to work performed in Antarctica, a region that is not specifically identified as covered anywhere in the statute. Such a ruling would undoubtedly raise the same "delicate questions of international relations" that Congress sought to avoid when it enacted section 213(f). [25] It would also lead to substantial uncertainly with regard to the scope of the application of the FLSA's overtime rate requirement.

■ If there is any remaining doubt about whether Antarctica is a "foreign country" and, thus, is excluded from the coverage of the FLSA's overtime rate requirement, the presumption against extraterritorial application of United States statutes should resolve that doubt in favor of exclusion. "It is a longstanding principle of American law 'that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States.' " [26] Hence, it must be "assume[ed] that Congress legislates against the backdrop of the presumption against extraterritoriality." [27] Because, in this case, there is no clear evidence of congressional intent to apply the FLSA's overtime rate requirement to work performed in Antarctica (which is not within the territorial jurisdiction of the United States), this court will not presume that Congress intended the statute to so apply.

---

23. *Id.*

24. *See* 42 U.S.C. § 213(a)(12) ("The provisions of ... section 207 ... shall ... apply with respect to ... any employee employed as a seaman ... on an American vessel.").

25. S.Rep. No. 85–987 (1957), *reprinted in* 1957 U.S.C.C.A.N. 1757. The Supreme Court has noted that "Antarctica is best described as 'an entire continent of disputed territory.' " *Smith v. United States,* 507 U.S. 197, 198 n. 1, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993) (quoting F. Auburn, Antarctic Law and Politics 1 (1982)). Indeed, "[s]even nations—Argentina, Australia, Chile, France, New Zealand, Norway, and the United Kingdom—presently assert formal claims to pie-shaped portions of the continent that total about 85 percent of its expanse." *Id.* Although the terms of the Antarctic Treaty of 1959 purport to freeze the existing claims concerning Antarctica as of the date that the Treaty was executed, the

Treaty does nothing to change Antarctica's status as " 'an entire continent of disputed territory.' " *Id.* (quoting F. Auburn, Antarctic Law and Politics 1 (1982)). Thus, there is a very real danger that "the political sensitivities of ... foreign governments" would be offended by the application of the FLSA's overtime rate requirement in Antarctica. S.Rep. No. 85–987 (1957), *reprinted in* 1957 U.S.C.C.A.N., at 1757.

26. *E.E.O.C. v. Arabian Am. Oil Co.,* 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (quoting *Foley Bros. v. Filardo,* 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)).

27. *Id.; see Smith,* 507 U.S. at 204 n. 5, 113 S.Ct. 1178 ("[T]he presumption [against extraterritoriality] is rooted in a number of considerations, not the least of which is the commonsense notion that Congress generally legislates with domestic concerns in mind.").

**Conclusion**

For the foregoing reasons, Defendant's motion to dismiss is ALLOWED.

AN ORDER WILL ISSUE.