126 T.C. No. 5


UNITED STATES TAX COURT


DAVE ARNETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8866-03.               Filed January 25, 2006.


        P is a U.S. citizen who earned wage income while
working in Antarctica.  P excluded this wage income on
his 2001 Federal income tax return.  R issued a notice
of deficiency in which R determined that the excluded
wage income earned in Antarctica is taxable.

        <u>Held</u>:  The wage income P earned in Antarctica is
not excludable from income under sec. 911, I.R.C.


<u>Larry D. Harvey</u>, for petitioner.

<u>Randall L. Preheim</u>, for respondent.

OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined an $8,066 deficiency in petitioner's 2001 Federal income tax and a $1,613.20 section 6662[1] penalty.  After a concession,[2] the sole issue for decision is whether section 911 entitles petitioner to exclude from gross income the wage income he earned in Antarctica in 2001.

This case is before the Court on respondent's motion for summary judgment and petitioner's motion for partial summary judgment under Rule 121.  This is the lead case in an unconsolidated group of approximately 150 cases of similarly situated taxpayers who earned wage income in Antarctica and who make similar arguments.

Background

At the time of the filing of the petition, petitioner resided in Hayward, Wisconsin.  During 2001, petitioner was employed by Raytheon Support Services Co. (Raytheon).  Raytheon is under contract with the National Science Foundation (NSF), an agency of the United States, for certain research conducted in Antarctica.  During 2001, petitioner, a U.S. citizen, resided and performed services at McMurdo Station in Ross Island, Antarctica.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Respondent conceded that no penalty pursuant to sec. 6662 is due from petitioner for 2001.

On his 2001 Federal income tax return, petitioner excluded $48,894 of wage income earned and received as an employee of Raytheon for services performed in Antarctica during tax year 2001.

In the notice of deficiency, respondent determined that the income petitioner earned in Antarctica is taxable and is not excludable under section 911.

Discussion

I.   Summary Judgment

Respondent moved for summary judgment on the issue of whether section 911 entitles petitioner to exclude from U.S. taxation $48,894 of wage income earned and received as an employee of Raytheon for services performed in Antarctica during tax year 2001.

Petitioner moved for partial summary judgment on the issue of whether the income he earned in Antarctica is foreign earned income within the meaning of section 911.  Petitioner contends that the income he earned in Antarctica "was not earned from sources within the United States" and that he should be entitled to the foreign earned income exclusion under section 911. Petitioner's motion is for partial summary judgment because even if the Court finds for petitioner that the income he earned in Antarctica is foreign earned income, petitioner must still prove that he otherwise meets the requirements of section 911.

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Full or partial summary judgment may be granted only if it is demonstrated that no genuine issue exists as to any material fact and that the issues presented by the motion may be decided as a matter of law. See Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

We conclude that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.

II.  Gross Income in General

Section 61(a) provides that gross income means all income from whatever source derived. Thus, citizens of the United States generally are taxed on income earned outside the United States unless the income is specifically excluded. Specking v. Commissioner, 117 T.C. 95, 101-102 (2001), affd. sub nom. Haessly v. Commissioner, 68 Fed. Appx. 44 (9th Cir. 2003), affd. sub nom. Umbach v. Commissioner, 357 F.3d 1108 (10th Cir. 2003). Exclusions from income are construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusion.  Id.

III.  Section 911

Section 911(a) provides in part that a "qualified individual" may elect to exclude from gross income his or her

"foreign earned income". Section 911(b)(2) limits the amount of the exclusion for foreign earned income to $78,000 for 2001.

Section 911(b)(1)(A) defines "foreign earned income" to mean, in general, "the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual" during the period set forth in section 911(d)(1). Section 911(b)(1)(B) excludes from foreign earned income certain amounts not relevant to this case.

Section 911(d)(1) defines "qualified individual" for purposes of section 911 to mean:

> an individual whose tax home is in a foreign country and who is--
>> (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or
>>
>> (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period.

Section 911(d)(9) authorizes the Secretary to prescribe "regulations as may be necessary or appropriate to carry out the purposes of" section 911. Pursuant to that grant of authority, the Secretary promulgated proposed regulations under section 911 in 1983, see 48 Fed. Reg. 33007 (July 20, 1983), and final

regulations in 1985, see T.D. 8006, 1985-1 C.B. 224, that apply to the year in issue.

These regulations are legislative; therefore, they are entitled to <u>Chevron</u> deference and are binding on the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute. <u>United States v. Mead Corp.</u>, 533 U.S. 218, 227 (2001); <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.</u>, 467 U.S. 837 (1984); <u>Specking v. Commissioner</u>, <u>supra</u> at 115.

The Internal Revenue Code (Code) does not define "foreign country" for purposes of section 911. However, section 1.911-2(h), Income Tax Regs., provides:

> (h) Foreign country. The term "foreign country" when used in a geographical sense includes <u>any territory under the sovereignty of a government other than that of the United States</u>. It includes the territorial waters of the foreign country (determined in accordance with the laws of the United States), the air space over the foreign country, and the seabed and subsoil of those submarine areas which are adjacent to the territorial waters of the foreign country and over which the foreign country has exclusive rights, in accordance with international law, with respect to the exploration and exploitation of natural resources. [Emphasis added.]

The parties disagree regarding whether this definition of "foreign country" includes Antarctica. If Antarctica is a "foreign country" for purposes of section 911, petitioner may be able to exclude from income the wage income he earned in

Antarctica. If Antarctica is not a "foreign country" for purposes of section 911, petitioner must include in income the wage income he earned in Antarctica.

IV. Caselaw

In Martin v. Commissioner, 50 T.C. 59 (1968), we decided a similar issue--whether a U.S. citizen can exclude income earned in Antarctica. We held that Antarctica is not a foreign country within the meaning of section 911(a)(2) and section 1.911-1(b)(7), Income Tax Regs., as in effect in 1962.

In Martin, the taxpayer, as an employee of a private tax-exempt U.S. organization, took part in an Antarctic expedition. The taxpayer claimed, as does petitioner, that his earnings in Antarctica were exempt from tax under section 911, and the only question raised in this respect in Martin was whether Antarctica is a foreign country.

In finding that Antarctica is not a foreign country within the meaning of section 911(a)(2), we relied on a treaty effective June 23, 1961, between the United States and a number of other nations regarding Antarctica. The Antarctic Treaty, Dec. 1, 1959, 12 U.S.T. 794. The treaty provides that Antarctica is to be used for peaceful purposes, that scientific investigation there is to be encouraged, and that all questions of sovereignty over it are to be put in abeyance.

We also relied on the language of section 1.911-1(b)(7), Income Tax Regs., as in effect at the time, which defined "foreign country" as follows: "The term 'foreign country' means territory under the sovereignty of a government other than that of the United States and includes the air space over such territory. It does not include a possession or Territory of the United States."

We noted that in the light of the international treaty concerning Antarctica, the U.S. Department of State did not consider Antarctica to be under the sovereignty of any government. Therefore we held that Antarctica was not a foreign country within the meaning of the regulations or of section 911 as then in effect. Martin v. Commissioner, supra at 62; see also Rev. Rul. 67-52, 1967-1 C.B. 186.

The treaty regarding Antarctica is still in effect, and therefore Antarctica remains a sovereignless region.[3] Petitioner nevertheless contends that Martin has been overruled and superseded by the holding of the Supreme Court of the United States in Smith v. United States, 507 U.S. 197 (1993), and the holding of the U.S. District Court for the District of Massachusetts in Smith v. Raytheon Co., 297 F. Supp. 2d 399 (D. Mass. 2004).

---

[3] The treaty was in force as of Jan. 1, 2005. Treaties in Force, http://www.state.gov/documents/organization/53776.pdf.

In Smith v. United States, supra at 198, the issue was
"whether the Federal Tort Claims Act (FTCA), 28 U.S.C. §§
1346(b), 1402(b), 2401(b), 2671-2680 (1998 ed. and Supp. II),
applies to tortious acts or omissions occurring in Antarctica, a
sovereignless region without civil tort law of its own."  The
plaintiff, Mrs. Smith, brought a wrongful-death action against
the United States under the FTCA for the death of her husband,
Mr. Smith.  At the time of his death, Mr. Smith was employed as a
carpenter at McMurdo Station on Ross Island, Antarctica, for a
construction company under contract to the NSF, the same agency
that had a contract with Raytheon in the instant case.  Mr. Smith
died after falling into a crevasse in Antarctica.

The Supreme Court held that Antarctica is a foreign country
for purposes of the FTCA.  Id. at 201-202.  The Supreme Court
reasoned that Mrs. Smith's claim was barred by the foreign-
country exception of the FTCA under 28 U.S.C. sec. 2680(k), which
precludes the exercise of jurisdiction over "any claim arising in
a foreign country."  The Court based its conclusion on the
particular language of the FTCA.  Id. at 201-205.

In Smith v. Raytheon Co., supra, the U.S. District Court for
the District of Massachusetts held that Antarctica is a foreign
country for purposes of the Fair Labor Standards Act (FLSA).  The
plaintiffs claimed that the FLSA required their employer,
Raytheon, which had entered into a contract with the NSF to

perform services in Antarctica, to pay them overtime for work they performed in Antarctica. Id. at 400. The FLSA requires an employer to pay an employee "at a rate not less than one and one-half times the regular rate at which he is employed" for the hours the employee works in excess of 40 hours per week. 29 U.S.C. sec. 207(a). However, there are several exceptions to this rule including geographical limits. Certain provisions of the FLSA, including section 207, do not apply where employee services are performed within a foreign country. 29 U.S.C. sec. 213(f). The court concluded that Antarctica is a foreign country for purposes of the FLSA and based its conclusion on the particular language of the FLSA. Smith v. Raytheon Co., supra at 401-402.

In the instant case, we are revisiting the same issue we discussed in Martin v. Commissioner, supra. Although the statutory and regulatory provisions discussed in Martin have been modified and there have been caselaw developments since Martin, these changes do not affect the conclusion that petitioner's income earned in Antarctica is subject to tax in the United States and petitioner does not qualify for the foreign earned income exclusion under section 911.

Moreover, both Smith v. United States, supra, and Smith v. Raytheon Co., supra, discuss the issue of whether Antarctica is a foreign country within the context of statutes other than the

<u>Code</u>.  The provisions of the Code and the applicable regulations are controlling herein.  Therefore, we do not find <u>Smith</u> and <u>Raytheon Co.</u> to be controlling, and we will not overrule our holding in <u>Martin</u> that Antarctica is not a foreign country for purposes of the Code.

V.  <u>Conclusion</u>

The foreign earned income exclusion of section 911 applies to amounts received "from sources within a foreign country or countries".  As Antarctica is not a foreign country for purposes of the Code, we conclude that petitioner is not entitled to exclude the wage income he earned in Antarctica from income for 2001 pursuant to section 911.  See also sec. 863(d) (providing that income earned in Antarctica by a U.S. person is sourced in the United States).

In reaching all of our holdings herein, we have considered all arguments made by the parties, and, to the extent not herein discussed, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered granting respondent's motion for summary judgment and denying petitioner's motion for partial summary judgment</u>.