**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED SERVICES AUTOMOBILE
ASSOCIATION; CHARLENE COZART,
Plaintiffs-Appellants,

v.

No. 96-1080

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-1114-A)

Argued: December 5, 1996

Decided: January 28, 1997

Before HALL and NIEMEYER, Circuit Judges, and DAVIS,
United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by published opinion. Judge Niemeyer wrote the opinion,
in which Judge Hall and Judge Davis joined.

_____

**COUNSEL**

**ARGUED:** Stephen Paul Zachary, MARTELL, DONNELLY, GRI-
MALDI & GALLAGHER, P.A., Washington, D.C., for Appellants.
Edward Roy Hawkens, Appellate Staff, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for

Appellee. **ON BRIEF:** Frank W. Hunger, Assistant Attorney General, Helen Fahey, United States Attorney, Robert S. Greenspan, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUS-TICE, Washington, D.C., for Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

This case involves an insurance company's effort to obtain reim-bursement from the United States for its pre-litigation settlement of a claim made against its insured for a tort allegedly committed within the scope of her federal employment. Because we agree with the dis-trict court that the insurance company's failure to comply with the requirements of the Federal Tort Claims Act deprives the court of subject matter jurisdiction, we affirm the court's ruling dismissing the complaint filed on the employee's behalf.

I

On Sunday, September 26, 1993, Charlene Cozart, a White House employee, was requested to report to work to conduct a special White House tour for visiting dignitaries, despite the fact that she never worked previously on a Sunday. On her way from her church in Fair-fax, Virginia, she collided with a Chrysler minivan driven by John T. Niehoff. The minivan's rear door latch failed and two young Niehoff children were thrown from the van, killing one and seriously injuring the other. The Niehoffs subsequently expressed their intention to sue Cozart and the Chrysler Corporation as joint tortfeasors.

Cozart's insurer, United States Automobile Association ("USAA"), contacted the United States Department of Justice, asserting that under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., Cozart was within the scope of her employment at the time of the accident and was, therefore, immune from suit and that the United States should be substituted as a defendant in any future tort action filed by the Niehoffs. Justice Department attorneys, however, expressed informally their belief that at the time of the accident

2

Cozart was going to work and, therefore, was outside the scope of her employment. They advised USAA accordingly that the government would, if formally requested, most likely deny the certification under the FTCA that Cozart was acting within the scope of her employment.

USAA attorneys attempted to negotiate an agreement with the Department of Justice for reimbursement by the United States if Cozart settled the Niehoffs' claim, but no such agreement was reached. Nonetheless, USAA kept the United States apprised of its settlement negotiations with the Niehoffs.

The Niehoffs took the position that they would consider settlement only if an offer were made before they filed a complaint. Faced with the possibilities that the government would deny Cozart a scope-of-employment certification under the FTCA and that an eventual court judgment in favor of the Niehoffs would exceed Cozart's policy limits, USAA negotiated a settlement with the Niehoffs for $375,000. While the government did not participate in the negotiations, it supplied USAA with a release form that included a release of the United States.

After the settlement with the Niehoffs was approved by the Circuit Court for the City of Alexandria, USAA and Cozart filed this action against the United States under the FTCA, seeking reimbursement for the $375,000 settlement on the ground that Cozart was acting within the scope of her employment at the time of the accident. The United States moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), asserting that the district court lacked subject matter jurisdiction and that at the time of the accident Cozart was not within the scope of her employment. Relying on both reasons given by the government, the district court dismissed the complaint.[1] This appeal followed.

_____

[1] The court explained that the FTCA made no provision for government reimbursement of a prior settlement by a federal employee. It added that Cozart was, in any event, acting outside the scope of her employment under Virginia's "going to or from work" rule because she was commuting to work at the time of the accident. See Smith v. Landmark Communications, Inc., 431 S.E.2d 306, 307-08 (Va. 1993); Sentara Leigh Hosp. v. Nichols, 414 S.E.2d 426, 427 (Va. App. 1992) (en banc).

3

II

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted). Although the Federal Tort Claims Act "waives the immunity of the United States[,] . . . we should not take it upon ourselves to extend the waiver beyond that which Congress intended." Smith v. United States, 507 U.S. 197, 203 (1993).

While the FTCA provides that in general "[t]he United States shall be liable, . . . relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, it provides specific procedures that must be followed both by the federal employee who has been sued and by the claimant. A federal employee who has been sued must deliver the suit papers to his superior or other designated person who, in turn, must furnish copies to the appropriate United States attorney, to the Attorney General, and to the head of the employee's agency. See 28 U.S.C. § 2679(c). If the Attorney General certifies that the employee was acting within the scope of his employment, the United States will be substituted as defendant. See 28 U.S.C. § 2679(d). If the Attorney General refuses to certify that the employee was acting within the scope of his employment,

> the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States.

28 U.S.C. § 2679(d)(3).

Once the United States has been substituted as defendant, the federal employee becomes immune from suit and the United States retains the sole right to determine and follow the litigation strategy that is in its best interest, including the assertion of all available defenses, see 28 U.S.C. § 2674, or settlement of the case, see 28

4

U.S.C. § 2677 (authorizing the Attorney General to settle any claim cognizable under 28 U.S.C. § 1346(b), "after commencement of an action thereon") (emphasis added); 28 U.S.C.§ 2679(e) (cross-referencing same). As the language of these provisions clearly indicates, a federal employee seeking to receive the benefit of the FTCA must wait until suit is filed and then comply with the FTCA's requirements.

In this case, Cozart chose not to follow the specified procedures. USAA, as Cozart's insurer, realized that if it demanded that suit be filed, it would risk foregoing the chance of settlement with the Niehoffs and, in the event that scope-of-employment certification was denied, exposing Cozart to liability in excess of her policy limits. The fact, however, that the appellants were forced to choose between two unappealing strategies cannot alter our analysis of the government's liability. "Congress created a limited waiver of sovereign immunity in the FTCA. This waiver permits suit only on terms and conditions strictly prescribed by Congress. . . ." Gould v. U.S. Dept. of Health and Human Services, 905 F.2d 738, 741 (4th Cir. 1990) (en banc), (citations omitted). The appellants failed to follow the requirements of 28 U.S.C. § 2679, and, in that failure, they not only bypassed the conditions precedent to governmental liability but also denied the United States its right to control the case. They thus converted a potential tort claim into an indemnity claim for which the United States has not waived its sovereign immunity. The FTCA does not provide such a mechanism for a federal employee to transfer liability to the United States for a claim made against the employee.[2]

The appellants rely on implications allegedly made in footnote 1 in Uptagrafft v. United States, 315 F.2d 200 (4th Cir. 1963), to argue that they are entitled to claim indemnity from the United States. Their reliance, however, is misplaced. That footnote stands for nothing more than the unremarkable proposition that if a person is injured by a federal employee acting within the scope of his employment, the

_____

[2] Had the Niehoffs chosen to take action directly against the United States on a respondeat superior theory, they would have been obligated to exhaust administrative remedies before filing suit, and the Attorney General would have been authorized to settle their claim at the administrative level. See 28 U.S.C. §§ 2675, 2672.

5

plaintiff's only remedy is a suit against the United States. Indeed, elsewhere in the opinion, we noted the unavailability of just the type of indemnity action which USAA has pursued here:

> [Exoneration] refers to the right to be reimbursed by reason of having paid that which another should be compelled to pay; [indemnity] . . . means compensation for loss already sustained. This right is generally based upon contract, express or implied. No basis exists in the [FTCA] or in Virginia law . . . for a claim for exoneration and/or indemnity such as is made in the instant case.

Id. at 203 (citations omitted).

USAA made a strategic litigation decision, perhaps the best decision in the circumstances. But the difficulty of its dilemma does not provide us with a basis for enlarging the government's consent to be sued. "[Courts] are not free to enlarge that consent to be sued which the government, through Congress, has undertaken so carefully to limit [in the FTCA]." Gould, 905 F.2d at 747. It is a fundamental command of the Appropriations Clause, U.S. Const. art. I, § 9, cl. 7, that only Congress has the power to define the availability of relief against the government and that "judicial use of the equitable doctrine[s] . . . cannot grant [a claimant] a money remedy that Congress has not authorized." Office of Personnel Management v. Richmond, 496 U.S. 414, 426 (1990). By electing to settle before Cozart was sued, USAA transformed the Niehoffs' tort claim, over which the government would have had control, into a federal employee's indemnity claim, the amount of which was determined by the employee. While Congress has provided governmental consent to be sued for the former claim, it has not for the latter.

Finding no jurisdiction, we need not reach the scope-of-employment issue.

AFFIRMED

6