## In re FLORSHEIM GROUP INC. et al., Debtors.

### Florsheim Group Inc. et al., Plaintiff,

### v.

### USAsia International Corporation, Defendant.

**Bankruptcy No. 02 B 08209.**

**Adversary No. 03 A 1859.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 30, 2005.

---

Shaw Gussis Fishman, Glantz Wolfson & Towbin, LLC, for Movant or Plaintiff.

McGuire Woods, LLP, for Respondent or Defendant.

## MEMORANDUM OPINION

CAROL A. DOYLE, Bankruptcy Judge.

This matter is before the court on the post-stipulation briefs of Florsheim Group Inc. ("Florsheim") and USAsia International Corporation ("USAsia"). The parties dispute whether preferential transfers made from Florsheim to USAsia may be avoided pursuant to 11 U.S.C. §§ 547 and 550. For the reasons stated below, the court concludes that Florsheim may avoid these transfers. Therefore, the court will enter a judgment against USAsia in the amount of $115,000 plus post-judgment interest.

### I. Issue

The parties have partially settled this adversary proceeding by stipulating to the relevant facts, resolving certain defenses, and agreeing to the amount of judgment if Florsheim should prevail. Three related issues remain in dispute: 1) whether the preferential transfers occurred in the United States or abroad; 2) if the transfers occurred abroad, whether Congress intended §§ 547 and 550 of the Bankruptcy Code to apply extraterritorially; and 3) in any event, whether principles of international comity weigh against applying § 547 to the transfers. The court concludes that the preferential transfers occurred primarily in the United States. Therefore, the court need not decide whether Congress intended to apply § 547 extraterritorially. The court also concludes that principles of international comity do not limit the application of § 547 in this case. Therefore, the court will enter judgment in favor of Florsheim in the amount agreed on by the parties, $115,000 plus post judgment interest.

### II. Factual Background

The following facts are taken from the parties' briefs and agreed order stipulating

to the facts. Florsheim, a Delaware corporation, filed for Chapter 11 protection in March 2002 in the Northern District of Illinois. In May and June of 2001, Florsheim entered into an agreement to purchase shoes from USAsia, a Taiwanese company with no operations in the United States. USAsia's primary business purpose was to serve as the sales agent for shoes manufactured by Glory Shoes Industrial Limited ("Glory Shoes") in mainland China. Florsheim hired Roberts Trading Company ("Roberts Trading"), a Taiwanese company, to contact USAsia in Taiwan and Glory Shoes in mainland China concerning the purchase of shoes manufactured by Glory Shoes.

Florsheim issued purchase orders in the United States that Roberts Trading translated into Chinese in Taiwan, and then sent by e-mail to USAsia. USAsia accepted the purchase orders by notifying Roberts Trading in Taiwan. At Roberts Trading's direction, USAsia arranged for a shipment of the shoes from China to Florsheim in the United States. USAsia completed United States customs forms for the export of the shoes to the United States.

Florsheim was not obligated to accept or pay for the shoes until it had an opportunity to inspect the shipment in St. Louis, Missouri, and reject non-conforming goods. The purchase orders and related invoices included terms providing that USAsia owned the shoes until Florsheim paid for them. After accepting the shoes in the United States, Florsheim paid approximately $229,000 to USAsia for the shoes via a series of wire transfers from its bank in the United States to USAsia's bank in Taiwan. These payments occurred during the 90 days before Florsheim's bankruptcy filing.

USAsia conducted all discussions and negotiations concerning the purchase orders with Roberts Trading in Taiwan. It did not communicate directly with Florsheim except that it sent copies of the invoices for the shoes to Florsheim by mail in August and September 2001. However, USAsia knew it was facilitating the sale of shoes to Florsheim, a U.S. corporation.

In May 2003, Florsheim filed this adversary proceeding against USAsia, seeking to recover approximately $229,000 in preferential payments pursuant to 11 U.S.C. §§ 547 and 550. On September 28, 2004, the parties stipulated to the facts and requested the court to decide whether § 547 of the Bankruptcy Code applies to this transaction. Florsheim and USAsia agree that the payments would be recoverable as preferences but dispute whether § 547 applies to this transaction. The parties agree that Florsheim received subsequent new value of approximately $68,000 from USAsia following the payments in question. They also agree that the payments from Florsheim to USAsia are not avoidable under the laws of England, Hong Kong or Taiwan. USAsia has not filed a proof of claim in Florsheim's bankruptcy, but it admits that the court has personal jurisdiction over it.

Under the parties' agreement, if the court determines that the transfers are avoidable under 11 U.S.C. §§ 547 and 550, Florsheim will receive $115,000 plus interest; if the court determines that the transfers are not avoidable, Florsheim will receive $30,000 plus interest. Because the court concludes that § 547 applies to these transfers, the court will enter the agreed judgment in favor of Florsheim for $115,000 plus interest.

### III. Legal Standards

To determine whether § 547 applies to the transaction with USAsia, the court must first decide where the transfer took place. If it took place principally in the United States, then there is no question

that U.S. law applies. If it took place outside the U.S., then the court must determine whether Congress intended § 547 to apply extraterritorially. In either event, when applying U.S. laws to transactions with international dimensions, the court should weigh principles of international comity to determine whether application of the statute is appropriate.

## A. Determining Where Transaction Took Place

■ The first question a court must address when considering whether a U.S. law applies to a transaction with international components is whether application of the statute "presents an extraterritoriality problem at all." *Envtl. Def. Fund v. Massey*, 986 F.2d 528, 532 (D.C.Cir.1993). That is, a court must determine whether the statute seeks to "regulate conduct in the United States or in another sovereign country." *Id.* The conduct at issue in this case is a preferential transfer. Under §§ 547 and 550 of the Bankruptcy code, a trustee may recover preferential transfers made by the debtor. A "transfer" is "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property." 11 U.S.C. § 101(54). However, the definition of "transfer" provides no guidance on how to determine where the transfer took place.

■ In the absence of statutory guidance, courts generally consider all component events of a financial transaction, rather than one dispositive factor, to determine where it took place. *See, e.g., Gushi Bros. v. Bank of Guam*, 28 F.3d 1535, 1538–39 (9th Cir.1994). In analyzing allegedly preferential transfers, courts have applied a "center of gravity" test, under which they "look at the facts of a case to determine whether they have a center of gravity outside the United States." *Maxwell*

*Communication Corp. plc v. Barclays Bank (In re Maxwell Communication Corp. plc)*, 170 B.R. 800, 809 (Bankr. S.D.N.Y.1994), *aff'd sub nom. Societe General plc v. Maxwell Communication Corp. plc (In re Maxwell Communication Corp. plc)*, 186 B.R. 807 (S.D.N.Y.1995), *aff'd on other grounds*, 93 F.3d 1036 (2d Cir.1996).

■ If the center of gravity is in the United States, then U.S. law applies. If the center of gravity is outside the United States, then the court must determine whether Congress intended to apply the law extraterritorially. Courts must presume that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Smith v. United States*, 507 U.S. 197, 204, 113 S.Ct. 1178, 122 L.Ed.2d 548 (1993); *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) ("*Aramco*") (quoting *Foley Bros. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680 (1949)); *see also Restatement (Third) of Foreign Relations Law* § 403 (1987) ("*Restatement*"). This "canon of construction . . . is a valid approach whereby unexpressed congressional intent may be ascertained. It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Aramco*, 499 U.S. at 248, 111 S.Ct. 1227. Therefore, a court must "presume that Congress intended its enactments to apply only within the territorial jurisdiction of the United States, unless the legislation reflects a contrary intent." *Kollias v. D & G Marine Maint.*, 29 F.3d 67, 70 (2d Cir.1994). Nevertheless, if a statute regulates conduct that took place principally in the United States, a court need not consider the presumption against extraterritoriality at all. *See Massey*, 986 F.2d at 532.

## B. Principles of International Comity

When applying U.S. laws to transactions with international components, courts also consider principles of international comity. These comity considerations are "wholly independent" of the presumption against extraterritoriality. *Aramco,* 499 U.S. at 264, 111 S.Ct. 1227. Thus, regardless of whether that presumption applies, courts assume that Congress incorporated choice-of-law principles consistent with principles of international comity. *Id.* at 817. Comity is the "recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). In other words, "a nation having some 'basis' for jurisdiction to prescribe law should nonetheless refrain from exercising that jurisdiction 'with respect to a person or activity having connections with another state when the exercise of such jurisdiction is unreasonable.'" *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 818–19, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (quoting Restatement § 403(1)).

Even if conduct occurs within United States borders, principles of comity may require a court to determine whether application of American law would be unreasonable. The reasonableness inquiry turns on a variety of factors, including the location of the regulated conduct; the connections between the United States and the conduct, parties, and protected class; the nature of the regulated conduct; whether the conduct is generally proscribed elsewhere; the expectations of the parties; the interests of other affected nations; the importance of the regulation; and the likelihood of actual conflict with other nations' laws. *See Restatement* § 403.

## IV. The Transaction with USAsia Was Not Extraterritorial

The court must first determine whether the transaction between Florsheim and USAsia took place primarily in the United States or abroad. Because the most significant events surrounding the transfers occurred in the United States, the court concludes that the center of gravity of the transfers was in the United States.

Florsheim, an American company, issued the purchase orders for shoes in the United States. The contractual documents required delivery of the shoes in the United States. They provided that Florsheim was not required to pay for the shoes until it had the opportunity to inspect them in the United States and reject nonconforming goods. USAsia retained title to the shoes, even after they were delivered to Florsheim in the United States, until Florsheim paid for the shoes. Once Florsheim inspected the shoes in the United States, it wired all payments from its bank in the United States.

The foreign aspects of the transaction— USAsia's location in Taiwan, the location of the receiving bank and the location of the intermediary that translated and negotiated the order-are insufficient to pull the center of gravity away from the United States. First, although USAsia is a Taiwanese company, it voluntarily contracted with an American corporation to deliver goods in the United States. Second, the location of the receiving bank is less significant because the obligation to pay arose only after the debtor received and inspected the goods in the United States. *See Interbulk, Ltd. v. Louis Dreyfus Corp. (In re Interbulk, Ltd.),* 240 B.R. 195, 199 (Bankr.S.D.N.Y.1999).

Third, the mere involvement of a foreign intermediary does not change the court's conclusion that the transaction occurred primarily in the United States. In *Interbulk*, the fact that the debtor negotiated through a foreign intermediary was insignificant to the court's decision. 240 B.R. at 199. The court concluded that the center of gravity of the transfer in that case was the United States even though a foreign intermediary negotiated the underlying agreement and the creditor attached a debt that a foreign company owed to the debtor in a foreign court, because the creditor was a domestic corporation who was attempting to get payment to its accounts in New York. *Id.* Similarly, in this case, Roberts Trading's limited involvement in translating and negotiating the contract under which Florsheim paid USAsia does not shift the center of gravity away from the United States.

USAsia asserts that this case is similar to *Maxwell*, in which the same court that decided *Interbulk* concluded that the center of gravity of preferential transactions was outside the United States. However, almost all aspects of the transactions in *Maxwell* occurred overseas. In *Maxwell*, a foreign debtor transferred funds from its foreign bank to a foreign creditor, the creditors were all foreign, and the debtor incurred the underlying debts abroad. 170 B.R. at 809. The only connection to the United States was that the debtor derived the funds from sales of assets located in the United States. *Id.* On these facts, the court concluded that the center of gravity of the transfers was outside the United States. *Id.*

*Maxwell* is easily distinguished. In this case, an American company transferred funds from an American bank on account an obligation that arose in the United States. The court's conclusion that the center of gravity of the transaction with USAsia is in the United States is consistent with both the *Maxwell* and *Interbulk* decisions. Because the court concludes that USAsia transaction occurred primarily in the United States, it need not consider whether Congress intended § 547 to apply extraterritorially.

## V. International Comity Does Not Dictate a Different Outcome

USAsia next argues that concerns of international comity weigh against applying § 547 to this transaction. Assuming that the court should consider international comity even though the transfers in this case occurred primarily in the United States, the court concludes that it is reasonable to apply U.S. law to this transaction.

USAsia argues that applying § 547 in this case is unreasonable based on a number of Restatement factors discussed above. First, USAsia claims that it had only minor connections with the United States and that the transaction occurred outside the United States. The court has already rejected these arguments and concluded that the transfers originated in the United States and had substantial connections to the United States. Second, USAsia asserts that it could not have anticipated this application of U.S. law. The court finds this claim of surprise unpersuasive. USAsia voluntarily agreed to sell shoes to an American corporation whose obligation to pay arose only upon satisfactory tender of shoes in the United States. It completed American customs forms and sent the shoes to the United States, where it retained ownership of the shoes until Florsheim accepted and paid for them. USAsia did not justifiably expect Taiwanese or some other law to apply.

Third, USAsia claims that preferential transfers are not of national importance. The court disagrees. The importance of

 

preferential transfers to bankruptcy proceedings cannot be understated. They often provide the primary source of funds for distribution to creditors.

■ Finally, USAsia asserts a generalized interest in harmonizing insolvency laws to respect local credit practices. USAsia argues that these transfers would not be avoidable under the laws of Taiwan and Hong Kong (the city from which the shoes were shipped). However, mere inconsistencies between U.S. law and foreign law is insufficient to raise serious concerns of international comity. "[C]omity is typically invoked where there are competing proceedings in two countries." *In re French,* 320 B.R. 78, 85 (D.Md.2004); *see also Maxwell Communication Corp.,* 93 F.3d at 1053 ("[W]here a dispute involving conflicting avoidance laws arises in the context of parallel bankruptcy ... comity argues decidedly against the risk of derailing that cooperation by the selfish application of our law to circumstances touching more directly upon the interests of another forum."). There is no parallel proceeding in any other country that competes with this bankruptcy case. *See H.K. & Shanghai Banking Corp. v. Simon (In re Simon),* 153 F.3d 991, 999 (9th Cir.1998) (affirming bankruptcy court's enforcement of discharge injunction against foreign creditor where no foreign proceeding competed). Therefore, there is no actual conflict with foreign law in this case that would make application of U.S. law unreasonable.

In short, USAsia has not presented any basis for concluding that principles of international comity weigh against applying § 547 to this case. The court will therefore apply § 547 to the transaction with USAsia.

## VI. Conclusion

For all the reasons stated, the court concludes that the payments made from Florsheim to USAsia may be avoided and recovered pursuant to 11 U.S.C. § 547 and 550. The court will enter a judgment against USAsia in the amount of $115,000 plus postjudgment interest.