# United States Court of Appeals
## For the First Circuit

No. 04-9006

IN RE ANTONIO RIVERA TORRES; SOFIA VILLATA SELLA,
Debtors.

UNITED STATES OF AMERICA,

Creditor, Appellant,

v.

ANTONIO RIVERA TORRES; SOFIA VILLATA SELLA,

Debtors, Appellees.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
OF THE FIRST CIRCUIT

Before

Torruella, Lynch, and Howard,
Circuit Judges.

Thomas J. Clark, Attorney, Tax Division, with whom Bethany
B. Hauser, Attorney, Tax Division, Eileen J. O'Connor, Assistant
Attorney General, and Of Counsel, H.S. Garcia, United States
Attorney, were on brief, for appellant.
Irving K. Hernandez Valls for appellees.

December 16, 2005

**LYNCH**, __Circuit Judge__.  Antonio Rivera Torres and Sofía Villata Sella, debtors, were awarded emotional distress damages by the bankruptcy court against the Internal Revenue Service for the IRS's violation of a discharge injunction.  The Bankruptcy Appellate Panel affirmed, but remanded the case to the bankruptcy court for reconsideration of debtors' request for attorneys' fees and litigation costs.  The United States appeals only the award of emotional distress damages.  We reverse the order awarding emotional distress damages because Congress has not waived the federal government's sovereign immunity for emotional distress damages, and remand for further proceedings consistent with this opinion.

**I.**

Only a brief summary of the facts is necessary.  On September 1, 1992, debtors filed for Chapter 7 bankruptcy.  The IRS filed a proof of claim for $21,587.11, consisting of an unsecured general claim of $14,486.62 for self-employment income taxes for 1985 and an unsecured priority claim of $7,100.49 for self-employment income taxes for 1989 through 1992.  In January of 1993, debtors received a discharge that freed them from "all dischargeable debts," which included only the IRS's unsecured general claim for the 1985 tax deficiency.  The IRS's claim for self-employment taxes for 1989 through 1992 were non-

dischargeable.[1] The IRS suspended collection activities on all the debts, including the non-discharged debt.

Debtors filed a tax return for 1995, showing that they were entitled to a refund for approximately $1,200. The IRS retained this refund and applied it to the discharged 1985 debt. According to the IRS, this occurred because of an error by an IRS technician. Since the amount of non-discharged debt exceeded the amount of the refund, an offset was in order. To do so required the inputting of particular codes into the IRS computer system. However, rather than inputting these codes for only the non-discharged debts associated with 1989 through 1992, the IRS technician entered the codes for all debts, including the discharged 1985 debts. The result was that in late 1996, the debtors' 1995 refund was applied to the discharged 1985 debt (since it was the oldest debt) and collection activities were resumed on all debts, including the 1985 debt, despite the discharge order.

The debtors began receiving notices from the IRS in September 1996. They unsuccessfully attempted to resolve the issue

---

[1] Section 523(a) of the Bankruptcy Code provides that some debts cannot be discharged, including any tax "of the kind and for the periods specified in section . . . 507(a)(8) of this title." 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8)(A)(i), in turn, describes a tax deficiency for which the return was due within three years prior to the filing of the bankruptcy petition. 11 U.S.C. § 523(a)(1)(A); see also Young v. United States, 535 U.S. 43, 46 (2002) (describing the operation of §§ 535(a) and 507(a)(8)). Since the claims based on taxes owed from 1989 through 1992 fell within this "three-year lookback period," see Young, 535 U.S. at 46, they could not be discharged.

with the IRS over the telephone. On March 18, 1997, the debtors filed a motion in the ongoing Chapter 7 bankruptcy proceedings seeking an order that the IRS show cause why it should not be held in contempt for violating the discharge injunction under 11 U.S.C. § 524. In the motion, the debtors sought compensatory damages, emotional distress damages, punitive damages, attorneys' fees, and costs. In April 1997, the IRS ceased collection activities and reversed the application of the refund and the bankruptcy distribution to the 1985 account, and applied it instead to the 1989 account. The remainder of the 1985 debt was cleared in August 1997.

In June of 1998, the IRS filed a motion for summary judgment requesting that the court dismiss with prejudice the debtors' action for contempt. The IRS conceded that its collection activities violated the discharge injunction, but argued that § 524 did not authorize an award of damages. At the summary judgment hearing, however, the IRS agreed that it could be held liable for compensatory damages, but not for emotional distress damages, punitive damages, attorneys' fees, and costs. The bankruptcy court entered partial summary judgment in favor of the debtors, subject to a later hearing on damages. The court found that 11 U.S.C. § 106(a) abrogated sovereign immunity for monetary relief -- including emotional distress damages, but not including punitive damages -- entered under 11 U.S.C. § 105(a), the provision of the

Bankruptcy Code giving the court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The court concluded that attorneys' fees and litigation costs were unwarranted because the debtors had failed to seek such fees and costs in administrative proceedings before the IRS.

After the evidentiary hearing for damages, during which the debtors testified as to their out-of-pocket costs and the emotional distress they experienced as a result of the IRS's actions, the bankruptcy court awarded Rivera Torres $4,000 for expenses and $5,000 for emotional damages, and awarded Villata Sella another $5,000 in emotional damages.

The IRS appealed only the emotional distress awards to the BAP, and debtors cross-appealed from the ruling that they were not entitled to attorneys' fees. The BAP found that § 105(a) permitted courts to award emotional distress damages. As for the IRS's arguments with respect to sovereign immunity, the BAP deemed them waived because the precise arguments made had not been raised before the bankruptcy court. The BAP also reversed the district court's denial of attorneys' fees and costs, and remanded to the bankruptcy court for further consideration. The IRS has only appealed the BAP's award of emotional distress damages. We reverse and remand for further proceedings consistent with this opinion.

**II.**

We deal first with the issue of appellate jurisdiction. We have jurisdiction to review "all final decisions, judgments, orders and decrees" of a BAP. 28 U.S.C. § 158(d)(1). We have held that:

> [W]hen a district court remands a matter to the bankruptcy court for significant further proceedings, there is no final order for the purposes of § 158(d) and the court of appeals lacks jurisdiction. When a remand leaves only ministerial proceedings, for example, computation of amounts according to established formulae, then the remand may be considered final.

In re Gould & Eberhardt Gear Mach. Corp., 852 F.2d 26, 29 (1st Cir. 1988). Here, the BAP remanded in part to the bankruptcy court for determination of attorneys' fees, and thus we must consider whether such a remand prevents the exercise of appellate jurisdiction here. We conclude that it does not.

The Supreme Court has held, in the context of an appeal under 28 U.S.C. § 1291, that a federal district court's decision is final and appealable even if issues regarding attorneys' fees and costs remain to be decided. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202-03 (1988) ("Courts and litigants are best served by the bright-line rule . . . that a decision on the merits is a 'final decision' for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case.").

The fact that here we are operating under § 158(d) rather than § 1291 makes little difference. We have noted that given "[t]he great similarity between an adversary proceeding in bankruptcy and an ordinary civil action," the standards regarding finality in civil actions will track the standards to be applied to judgments in bankruptcy proceedings. Estancias La Ponderosa Dev. Corp. v. Harrington (In re Harrington), 992 F.2d 3, 6 n.3 (1st Cir. 1993). Therefore, we hold that we have appellate jurisdiction over the government's appeal.

### III.

We turn now to the issue of sovereign immunity. The question presented is whether there is an explicit waiver of sovereign immunity in 11 U.S.C. § 106, as to allow an award of emotional distress damages against the United States, under the sanctions provisions of 11 U.S.C. § 105, to remedy a violation of 11 U.S.C. § 524, which enjoins actions to recover discharged debts.[2] The bankruptcy court and the BAP found that the imposition of emotional distress damages against the federal government was

---

[2] As its final argument, the IRS says there was no basis for a finding of emotional distress damages. It emphasizes that the debtors had discharged tax liabilities from 1985 and non-discharged tax liabilities from 1989 to 1992. When the IRS corrected its error, it did not return the tax refund; rather, it applied it against the non-discharged 1989 liability. We will assume, with some skepticism, that the debtors have met the standard for emotional distress damages.

not barred by sovereign immunity, relying on the waiver of immunity in § 106.  We believe this to be a question of first impression.

The debtors were awarded emotional distress damages by the bankruptcy court pursuant to a finding that the IRS had violated its 11 U.S.C. § 524 obligations not to attempt to collect a discharged debt.  While § 524 itself does not specify remedies for its violation, the remedies for violation of § 524 are set forth under 11 U.S.C. § 105(a), which authorizes courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The bankruptcy court reasoned that § 105(a) authorized an award of emotional distress damages for violations of § 524, that the waiver of sovereign immunity effectuated in § 106 extended to all remedies available under § 105(a), and therefore § 106 authorized an award of emotional distress damages against the United States.[3]

We start with the standards for determining whether Congress has waived the sovereign immunity of the federal government, noting that we review this determination de novo.

---

[3]  The BAP erred when it concluded the government had waived its arguments for immunity by not raising particular arguments in the bankruptcy court or to it.  The rule is that the defense of sovereign immunity cannot be waived in litigation.  See United States v. United States Fid. and Guar. Co., 309 U.S. 506, 513 (1940); Dep't of the Army v. Fed. Labor Relations Auth., 56 F.3d 273, 275 (D.C. Cir. 1995); see also Irving v. United States, 162 F.3d 154, 159-61 (1st Cir. 1998) (en banc) (holding that the government cannot waive or forfeit an argument that the discretionary function exception to the Federal Tort Claims Act (FTCA) should apply).

United States v. Puerto Rico, 287 F.3d 212, 216 (1st Cir. 2002); see also In re BankVest Capital Corp., 360 F.3d 291, 295 (1st Cir. 2004) ("We review the bankruptcy court's conclusions of law de novo, with the benefit of the BAP's bankruptcy expertise but without deference to its conclusions." (citing Fed. R. Bankr. P. 7052)). The debtors bear the burden of proof to establish a waiver of immunity. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

The standard for finding a waiver is quite stringent. A waiver must be "unequivocally expressed," Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999) (citing Lane v. Pena, 518 U.S. 187, 192-93 (1996)), and "must be strictly construed in favor of the sovereign," Orff v. United States, 125 S.Ct. 2606, 2610 (2005), with ambiguities construed against waiver, United States v. Williams, 514 U.S. 527, 531 (1995). Furthermore, a waiver of sovereign immunity may subject the federal government to some categories of damages, but not others. Lane, 518 U.S. at 192 ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver must extend unambiguously to such monetary claims." (emphasis added)).

The text of § 106(a), as amended in 1994, provides as follows:

> (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, . . . 362, . . . , 524, . . . of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a); see also Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, § 113, 108 Stat. 4106, 4117-18. The text of § 106(a) does not specifically refer to emotional distress damages at all.

There is no doubt that § 106 is an express waiver of sovereign immunity. That does not answer the question of what types of relief are encompassed in the waiver. There is also no doubt § 106 is a waiver, in appropriate circumstances, for "money recovery," 11 U.S.C. § 106(a)(3), and for entry of money judgments,

-10-

id. § 106(a)(4). We turn later to whether the "money recovery" language constitutes a waiver of immunity for emotional distress damages.

Section 106(a)(3) also contains a waiver of immunity for an "order, process, or judgment" issued under the sections enumerated in § 106(a)(1). One could argue that this language constitutes a flexible waiver of immunity for any "order, process or judgment" that a bankruptcy court may chose to enter under any of the enumerated sections. This argument, we think, rests on entirely too broad a reading of the waiver in § 106. The argument is one which would swamp the strict construction and express statement rules governing waiver of sovereign immunity.

A.      The Enumerated Sections Under § 106(a)(1) as a Source of Waiver

A narrower approach is to look at the enumerated sections and the nature of the relief available under those sections to determine if there has been waiver of immunity as to such relief. The inquiry, though, must have temporal confines. We ask not about present understandings, but about what Congress understood in 1994, at the time of the amendment of § 106, to be the content of its waiver for "orders, processes, or judgments" under § 105 and the other enumerated sections. The enumerated section at issue here, § 105(a), authorizes the court to issue any order so long as it is "necessary or appropriate to carry out the provisions of this title." The temporal distinction we draw is important because it

-11-

means that we are not here resolving any question as to the types of relief that are _now_ available to private parties under any of the enumerated sections.

This narrower temporal approach -- looking at congressional understanding of the enumerated sections at the time of the amendment -- is preferable for several reasons. First, it is the approach taken by the Supreme Court in several cases. See Sosa v. Alvarez-Machain, 542 U.S. 692, 711 (2004) (relying on the fact that Congress' "provision of an exception when a claim arises in a foreign country was written at a time when the phrase 'arising in' was used in state statutes to express the position that a claim arises where the harm occurs"); Bowen v. Massachusetts, 487 U.S. 879, 897 (1988) ("There is no evidence that any legislator in 1976 understood the words 'money damages' to have any meaning other than the ordinary understanding of the term as used in the common law for centuries.").

Second, the approach adheres to the general principle that Congress is presumed to know the content of background law. See Smith v. United States, 507 U.S. 197, 203-04 (1993) (interpreting the scope of the foreign country exception to the Federal Tort Claims Act (FTCA) in light of the assumption "'that Congress legislates against the backdrop of the presumption against extraterritoriality'" (quoting EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991))); see also Exxon Mobil Corp. v. Allapattah

-12-

Servs., Inc., 125 S.Ct. 2611, 2636 (2005) ("The Court should assume, as it ordinarily does, that Congress legislated against a background of law already in place and the historical development of that law."); Villescas v. Abraham, 311 F.3d 1253, 1261 (10th Cir. 2002) ("We must presume that Congress was aware at those times, and during all the years since 1974 when [the ADEA] was passed, that the general rule announced by the courts was to forbid damages for emotional distress [under the ADEA], and chose not to interfere with that rule.").

Third, our approach gives content as to what type of money judgment the waiver of immunity applies.

Fourth, this approach is a corollary of the principle that the Code itself should not be read "to effect a major change in pre-Code practice" unless the change is the subject of "at least some discussion in the legislative history." Dewsnup v. Timm, 502 U.S. 410, 419 (1992).[4]

Fifth, it also avoids an assumption, engaged in by the BAP, that the scope of remedies available against private parties as the law develops are co-extensive with those available against

---

[4]  The government observes that absent a contrary statement, Congress may be assumed to have implicitly imparted background law, such as common law standards, into the Code. See Field v. Mans, 516 U.S. 59, 73-74 (1995). As the government points out, it has found no pre-Code bankruptcy cases awarding emotional distress damages under similar circumstances. It also argues that "there is no indication in the legislative history that Congress intended to make such [emotional distress] damages available."

-13-

the government when it waives immunity.  We note that on the one occasion that Congress wished to establish co-extensiveness, under the FTCA, it was explicit about doing so.[5]

And sixth, our principle that the background law against which Congress legislates must have been clearly established at the time § 106 was passed is itself reinforced by § 106(a)(5).  That section states: "Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy, or nonbankruptcy law."  11 U.S.C. § 106(a)(5).

It is arguable that such a narrow temporal approach is not appropriate.  There is little reason to doubt that Congress could give to another governmental actor some degree of flexibility to interpret types of relief subject to Congressional waivers of immunity and to change those interpretations over time.  But here,

---

[5]  Section 106 does not contain the sort of waiver found in the FTCA, which provides: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."  28 U.S.C. § 2674. Based on this waiver, courts have found that the FTCA waives the federal government's immunity in an action against the United States for emotional distress damages.  See Sarno, Recovery of Damages for Infliction of Emotional Distress Under Federal Tort Claims Act, 107 A.L.R. Fed. 309 (citing cases).  By contrast, § 106 does not explicitly tie the scope of government liability to the scope of private liability.  Therefore, it is not clear that Congress intended to expose the federal government to all the remedies that may be imposed on private parties in bankruptcy proceedings.

Congress has clearly endorsed a temporal approach in § 106(a)(5), by stating that no new rights were to be created through the mechanism of the waiver of immunity.

Instead, applying the temporal rule, we assume that if it were perfectly clear that the enumerated section at issue, here § 105, encompassed the relief of emotional distress damages at the time of the amendment of § 106, then the § 106 waiver would encompass such damages. But if debtors cannot show that the background law clearly established that they were entitled to emotional distress damages under the relevant enumerated clauses, then this argument fails.

The government argues that § 105 does not now and has never authorized emotional distress damages. Our concern is narrower, and has to do with the background law Congress was presumed to know in 1994, at the time it waived immunity as to the enumerated sections.[6] The background law at the time Congress passed the Bankruptcy Reform Act does not support the debtors' reading of the remedies available as including emotional distress damages under the enumerated sections in the waiver language of § 106.

---

[6] The government argues that the rights "protected under the Bankruptcy Code are financial and economic rights: the Code is not crafted with a view to protecting debtors from emotional distress." This argument would apply to all parties subject to § 105 orders, not just the government. We address only the question of waiver of sovereign immunity.

We start with § 105(a), the statutory sanction power, and § 524, the provision violated. The initial question of whether a violation of § 524 could be remedied at all by an award of damages was resolved at the time of the amendment of the waiver of immunity provision in § 106. This court did not resolve that question until 2000. In Bessette v. Avco Financial Services, Inc., 230 F.3d 439, 445 (1st Cir. 2000), as the BAP properly recognized, this court held that a district court could award damages as a sanction under § 105 for violations of § 524. Bessette referred to "actual damages," but did not specify what was encompassed by this term; nor did it discuss emotional distress damages. Our quest narrows to focus on emotional distress damages and their availability in 1994 under § 105.

Only one circuit, by 1994, had directly considered the question of whether § 105(a) or § 524 authorized courts to issue awards for emotional distress damages, and it answered that question in the negative. See Burd v. Walters (In re Walters), 868 F.2d 665, 670 (4th Cir. 1989). The court vacated the award for emotional distress, holding: "[N]o authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt, and we know of none." Id.

This conclusion that emotional distress damages were unavailable was reinforced by the decision in McBride v. Coleman, 955 F.2d 571 (8th Cir. 1992). McBride dealt with the power of

-16-

civil contempt more generally, not specifically under § 105(a). The court, in rejecting an award for emotional distress damages, held:

> The problems of proof, assessment, and appropriate compensation attendant to awarding damages for emotional distress are troublesome enough in the ordinary tort cases, and should not be imported into civil contempt proceedings. Although in some circumstances an award of damages to a party injured by the violation of an injunction may be appropriate, the contempt power is not to be used as a comprehensive device for redressing private injuries, and it does not encompass redress for injuries of this sort.

Id. at 577. McBride and Burd make it clear that at the time of the amendment of § 106, the background law was that § 105(a) did not encompass an award for monetary damages,[7] much less for a § 524 violation. That background law argues against a finding of emotional distress damages.

Our temporal approach to the issue of availability of emotional distress damages may differ from that of the Eleventh

---

[7] The BAP rejected the views of the courts in McBride and Burd. Instead it pointed to a single bankruptcy court decision, after the amendment of § 106, finding that court could award emotional distress damages against the IRS. Matthews v. United States (In re Matthews), 184 B.R. 594 (Bankr. S.D. Ala. 1995). The BAP relied on the fact that Bessette cited Matthews as part of a long string cite, concluding that "[t]his reference strongly suggests an acknowledgment by the First Circuit that full remedial relief for civil contempt must include emotional distress damages." The BAP also pointed to one decision awarding emotional distress damages against a private party under § 105(a), see In re Perviz, 302 B.R. 357, 372 (Bankr. N.D. Ohio 2003), and two other decisions awarding emotional distress damages under § 362(h), see In re Bishop, 296 B.R. 890 (Bankr. S.D. Ga. 2003); Holden v. IRS (In re Holden), 226 B.R. 809, 812 (Bankr. D. Vt. 1998).

-17-

Circuit, which has held that § 106(a) unequivocally waives sovereign immunity for court-ordered monetary damages under § 105, although not for punitive damages. Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1555 (11th Cir. 1996); Hardy v. United States (In re Hardy), 97 F.3d 1384 (11th Cir. 1996). While the Eleventh Circuit has not said that emotional distress damages are available as actual damages, it has tied the waiver of immunity to any monetary relief deemed to be "necessary or appropriate." Hardy, 97 F.3d at 1389-90. More significantly, Hardy states: "While it is true that § 524 does not specifically authorize monetary relief, the modern trend is for courts to award actual damages for violation of § 524 based on the inherent contempt power of the court." Id. at 1389. Whatever the modern trend as to private parties, we think the waiver of immunity question is a different issue and far narrower.

Debtors turn by analogy to 11 U.S.C. § 362(h) and argue it encompasses emotional distress damages within its authorization for "actual damages," and that therefore we should read § 105 to also cover such damages. The argument fails. First, the order here was not entered for violation of § 362(h), which prohibits violations of the automatic stay provisions during the proceedings; rather, the order stemmed from a violation of the discharge injunction under § 524. Second, even assuming the analogy to § 362(h) is apt, while it is true that the text of § 362(h) does

-18-

provide for "actual damages,"[8] there was no consensus in the background law that emotional distress damages are encompassed within "actual damages" at the time of the amendment of the immunity provision in § 106.

Even today the question of whether emotional distress damages are "actual damages" within the meaning § 362(h) has not been conclusively determined. The Ninth Circuit, the only circuit to hold thus far that the term "actual damages" in § 362(h) encompasses emotional distress damages, also acknowledges that the issue of whether that is what Congress intended is not clear. In re Dawson, 390 F.3d 1139, 1146 (9th Cir. 2004). And the Seventh Circuit has held that "actual damages" in § 362(h) contemplated a financial loss, not emotional distress damages.[9] Aiello v. Providian Fin. Corp., 239 F.3d 876, 881 (7th Cir. 2001). Aiello points out:

> The law has always been wary of claims of emotional distress, because they are so easy to manufacture. For a long time damages for such distress were generally

---

[8] In a case that was decided after Hoffman v. Connecticut Department of Income Maintenance, 492 U.S. 96 (1989), and before the 1994 amendment to § 106, the district court had awarded actual damages for the government's violation of the automatic stay provisions of § 362(h). Small Bus. Admin. v. Rinehart, 887 F.2d 165, 166 (8th Cir. 1989). The government in Rinehart did not appeal the award of actual damages, only of punitive damages. Id. at 166 n.1.

[9] The court in Aiello also suggested that under the "clean-up doctrine" of equity, emotional distress might be compensable if there was a "financial loss to hitch it to." Aiello, 239 F.3d at 880.

-19-

limited to cases in which the plaintiff was able to prove some other injury.  The courts have grown more confident of their ability to sift and value claims of emotional distress, and the old limitations have largely been abandoned; but suspicion lingers as demonstrated by two recent Supreme Court decisions . . . that set a high threshold for proof of damages for emotional distress caused by a denial of due process of law.

Id. at 880 (citations omitted) (citing Metro-North Commuter R.R. Co. v. Buckley, 521 U.S. 424, 428 (1997); Consol. Rail Corp. v. Gottshall, 512 U.S. 532 (1994)).  The Aiello court found it doubtful that Congress intended "to change the fundamental character of bankruptcy remedies by enacting [§ 362]," even in light of "the modern era of receptivity to claims of damages for purely emotional injury."  Id.

This circuit has not squarely resolved the question, although there is dicta in Fleet Mortgage Group v. Kaneb, 196 F.3d 265 (1st Cir. 1999), suggesting that emotional distress damages may be available as "actual damages" under § 362(h).  See id. at 269. The panel did not reach the question of whether § 362(h) authorizes emotional distress damages.[10]

Thus, none of the enumerated sections in § 106(a)(1) that apply directly (§§ 105, 524) or by analogy (§ 362) clearly established the availability, even against private parties, of an

---

[10] The language in this opinion is dicta because, as the opinion notes, Fleet had failed to make any arguments regarding the appropriateness of the emotional distress damages award before the BAP, much less regarding whether the statute authorized the award, and had therefore waived the argument.  Fleet Mortgage Group, 196 F.3d at 269.

award of emotional distress damages in 1994 as a matter of background law.  Those sections do not provide a basis to find clear waiver of sovereign immunity as to emotional distress damages.

B.         The Term "Money Recovery" Under § 106(a)(3)

The debtors also argue that the language "including an order or judgment awarding a money recovery" in § 106(a)(3) authorizes waiver of sovereign immunity as to emotional distress damages.

The government argues that the phrase "money recovery" does not even unambiguously mean "money damages," much less that money damages necessarily includes emotional distress damages.  The bankruptcy court concluded money recovery was the equivalent of money damages, and money damages included emotional distress damages.

We are reluctant to approach the question as one of semantic equivalents, regardless of the circumstances in which the question arose.  Whether Congress intended the term "money recovery" to mean "money damages" may turn on context.  Bowen v. Massachusetts, 487 U.S. 879 (1988), makes this point and compels the conclusion that the term "money recovery" cannot, as a matter of plain text reading, be deemed to include emotional distress damages.  In Bowen, the Court interpreted the waiver of sovereign immunity in the Administrative Procedure Act as to claims for

-21-

"relief other than money damages." 5 U.S.C. § 702. The Court drew a distinction between damages, which "are given to the plaintiff to substitute for a suffered loss," and specific relief, which "attempt to give the plaintiff the very thing to which he was entitled." Id. at 895 (quoting D. Dobbs, Handbook on the Law of Remedies 135 (1973)) (internal quotation mark omitted). It held that 5 U.S.C. § 702, while withholding waiver for "money damages," still waived sovereign immunity for specific relief, such as recovery of money or properties wrongfully taken.

The United States argues in its brief that the legislative history of § 106 supports its arguments and that it is appropriate to consider that history. The Supreme Court has followed two different courses as to the relevance of legislative history on questions of statutory waiver of sovereign immunity. In one line of cases, the court has declined to consider legislative history at all. See, e.g., Orff, 125 S.Ct. at 2610; Blue Fox, 525 U.S. at 261; Lane, 518 U.S. at 192 ("A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text."); see also Marina Bay Realty Trust LLC v. United States, 407 F.3d 418, 422 (1st Cir. 2005).

However, in another line of cases, legislative history plays in important role in construction of the statute as to waiver of immunity. That line includes the most recent Supreme Court decision about waiver of immunity as to particular remedies, West

-22-

v. Gibson, 527 U.S. 212 (1999).  See id. at 222 (examining legislative history to determine Congressional intent as to the term "appropriate remedies").  Other cases, both recent and older, also make reference to the legislative history to determine the meaning of the terms used by Congress in a statutory waiver of immunity.  See Smith, 507 U.S. at 202 n.4;  Bowen, 487 U.S. at 896-901;  see also Sosa, 542 U.S. at 704-709 (relying on legislative history to determine the scope of the foreign country exception to the waiver in the FTCA); Scarborough v. Principi, 541 U.S. 401, 421 & n.9 (2004) (relying on legislative history to determine the scope of waiver of immunity in the Equal Access to Justice Act).

Moreover, the courts of appeals have frequently looked to the legislative history of the waiver of immunity provisions, § 106(a), which are at the heart of this case.  See, e.g., Franklin Sav. Corp. v. United States (In re Franklin Sav. Corp.), 385 F.3d 1279, 1290 (10th Cir. 2004); Gordon Sel-Way, Inc. v. United States (In re Gordon Sel-Way, Inc.), 270 F.3d 280, 285 (6th Cir. 2001); Anderson v. FDIC, 918 F.2d 1139, 1143 (4th Cir. 1990); Ashbrook v. Block, 917 F.2d 918, 924 (6th Cir. 1990).

We emphasize we do not here look to statutory history to supply a waiver that does not appear clearly in any statutory text. See Lane, 518 U.S. at 192.  The statutory text clearly waives immunity for "monetary recovery."  The question is what Congress meant by that phrase.  Thus, our case differs from other sovereign

-23-

immunity cases, like <u>Lane</u> v. <u>Pena</u>, 518 U.S. 187, which addressed the question of whether Congress waived immunity for any money awards at all. Our case, by contrast, deals with the scope, not the existence, of the waiver. <u>See</u> Nagle, <u>Waiving Sovereign Immunity in an Age of Clear Statement Rules</u>, 1995 Wis. L. Rev. 771, 820-21 (observing that clear statement rules are "well-suited for interpretive questions that can be answered with a simple 'yes' or 'no'" -- such as whether a statutory provision has waived sovereign immunity at all -- but that such rules "pose problems" with "interpretive questions that do not present two such sharp alternatives" -- such as questions about the <u>scope</u> of a waiver).

We think legislative history important on at least one point. If the legislative history showed that the clear intent of Congress in enacting § 106 was to overrule cases holding that no emotional distress damages were available, that would be significant. But the legislative history shows no such thing. Indeed, it works against finding a waiver of immunity.

The legislative history shows that the focus of Congress's concern was "monetary recovery" of a distinctly different type than emotional distress damages. The provision for waiver of sovereign immunity in the Bankruptcy Code was overhauled in 1994. <u>See</u> <u>Bankruptcy Reform Act of 1994</u>, Pub. L. No. 103-394, § 113, 108 Stat 4106, 4117-18; <u>see</u> <u>also</u> Gibson, <u>Congressional Response to Hoffman and Nordic Village: Amended Section 106 and</u>

-24-

Sovereign Immunity, 69 Am. Bankr. L.J. 311 (1995).  Before the 1994 amendment, § 106(c) had provided that "notwithstanding any assertion of sovereign immunity" any provision of the Bankruptcy Code which contained the phrase "creditor," "entity," or "governmental unit" applied to governmental units and that "a determination by a court of an issue arising under such a provision [bound] governmental units."  Hoffman v. Conn. Dep't of Income Maint., 492 U.S. 96, 100-01 (1989) (providing former version of § 106).  In passing the Bankruptcy Reform Act of 1994, Congress provided a waiver of immunity for "an order, process or judgment" under one of enumerated sections, "including an order or judgment awarding a money recovery, but not including an award of punitive damages."  11 U.S.C. § 106(a)(3).

The House Report accompanying the final bill demonstrates that Congress intended to abrogate two Supreme Court cases which had held that § 106, as it then stood, did not waive sovereign immunity.  See H.R. Rep. No. 103-835, at 42 (1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3350-51.  One case, Hoffman, 492 U.S. 96, involved the sovereign immunity of state agencies in an action where the bankruptcy trustee sought to recover Medicaid payments owed to a nursing home.  In Hoffman, the plurality held that § 106, read as a whole, did not waive immunity for monetary recovery, but waived immunity only for declaratory and injunctive relief, binding governmental units to issues determined by the bankruptcy court

-25-

even when those units did not appear before the court. Id. at 99-100. The other case, United States v. Nordic Village, Inc., 503 U.S. 30 (1992), involved the waiver of the sovereign immunity of the federal government, and specifically, the IRS. There, the bankruptcy trustee for a corporate debtor sought recovery of an improper post-petition transfer of estate property by an officer of the bankrupt company to pay off the officer's personal tax liabilities. The Court, after finding that the waiver under then § 106(a) and (b) (now § 106(b) and (c)) were unavailable, found there were at least two interpretations of § 106(c) that limited the waiver to declaratory and injunctive relief, and so the waiver could not be said to be "unambiguous" as to damages. Neither Hoffman nor Nordic Village involved emotional distress damages, but only classic recovery of moneys already paid to the United States that the estate wished to recover. The legislative history supports the view that the "money recovery" language in the new § 106 was in reference to the type of recoveries involved in Hoffman and Nordic Village and not emotional distress damages.

In the end, it is clear that Congress has not "definitely and unequivocally" waived sovereign immunity under § 106(a) of the Bankruptcy Code for emotional damages awards in circumstances such as these.[11] We hold, therefore, that sovereign immunity bars awards

---

[11] Neither side suggests that § 106(b) or (c) plays a role in this case.

for emotional distress damages against the federal government under § 105(a) for any willful violation of § 524, and that immunity is not waived by § 106.

If more were needed, and it is not, our view is also that recognizing a waiver of sovereign immunity for emotional distress damages in this case would run afoul of § 106(a)(5), which forbids the creation of any substantive claim for relief "not otherwise existing under this title, the Federal Rules of Bankruptcy, or non-bankruptcy law."  11 U.S.C. § 105(a)(5).

For the above reasons we **reverse** the portion of the judgment awarding emotional distress damages against the IRS and **remand** for further proceedings consistent with this opinion.

**(Concurrence follows.)**

**TORRUELLA**, <u>Circuit Judge</u>, **Concurring.**  I concur with the result in this case: 11 U.S.C. § 106 does not contain an explicit waiver of sovereign immunity as to emotional distress damages under 11 U.S.C. § 105.  However, I write separately because I am not persuaded that it is either necessary or appropriate to look to legislative history to reach this result.

The rule is that "a waiver of the Federal Government's sovereign immunity must be unequivocally expressed." <u>Lane</u> v. <u>Pena</u>, 518 U.S. 187, 192 (1996).  This rule applies to awards for monetary damages.  <u>Id.</u> at 192-93.  Even when a cause of action has been authorized against the government, sovereign immunity may be waived with regard to certain remedies but not as to others.  "To sustain a claim that the Government is liable for awards of monetary damages, the waiver must extend unambiguously to <u>such</u> monetary claims." <u>Id.</u> at 192 (citing <u>United States</u> v. <u>Nordic Village, Inc.</u>, 503 U.S. 30, 34 (1992)).

Because the waiver must be unequivocally expressed, our analysis is confined to the text of the statute itself.  <u>Lane</u> dictates in no uncertain terms that "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text."  <u>Id.</u> (internal citation and quotation marks omitted).

-28-

As the majority opinion observes, the text of the statute does not mention emotional distress damages one way or another. And thus, of the utmost importance is the meaning of the term "money recovery." Section 106(a)(3) of the Bankruptcy Code waives sovereign immunity for claims for "money recovery" and only explicitly excludes "punitive damages" from the waiver. The specific exclusion of punitive damages might indicate -- as debtors suggest -- that "money recovery" should be read broadly to include all categories of monetary relief, including "money damages." Indeed, the Eleventh Circuit has stated that § 106 (a)(3)'s waiver of sovereign immunity extended to "money damages." See Jove Engineering, Inc. v. IRS, 92 F.3d 1539, 1555 (11th Cir. 1996).[1]

Although the broad construction suggested above is not without superficial logic, a "waiver of sovereign immunity must be

---

[1] However, Jove Engineering's brief discussion of § 106(a)(3), leaves unclear whether the court simply assumed that the terms "money recovery" and "monetary damages" were interchangeable. See Jove Engingeering, 92 F.3d at 1555 (concluding that since "[s]ection 106 expressly extends this waiver to permit a court to 'issue against a governmental unit an order, process, or judgment . . . awarding a money recovery'" it plainly "waives sovereign immunity for court-ordered monetary damages under § 105") (citation to § 106 corrected from original).

I do not believe that our holding today is inconsistent with Jove Engineering because the Eleventh Circuit did not elaborate on the scope of "monetary damages" available under Section 106(a)(3), except to suggest that it would cover at least "actual expenses," assuming such expenses were consistent with other statutory provisions. Id. at 1542-43, 1549.

strictly construed in favor of the sovereign." Orff v. United States, 125 S. Ct. 2606, 2610 (2005). Waivers of immunity must be express, not implied, and we will not imply from the failure to specifically exclude emotional distress damages -- even where punitive damages are specifically excluded -- that such damages are included.

In Bowen v. Massachusetts, 487 U.S. 879 (1988), the Supreme Court suggested a distinction between specific relief and damages that is of some assistance in our analysis. Bowen interpreted "monetary relief" to include the two separate categories of "money damages" and "specific relief." Bowen considered the Administrative Procedure Act's ("APA") waiver of sovereign immunity, 5 U.S.C. § 702, as to claims for "relief other than money damages." Interpreting the term "money damages," the Court distinguished between damages and specific relief, explaining that "[d]amages are given to the plaintiff to substitute for a suffered loss, whereas specific remedies 'are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled.'" Bowen, 487 U.S. at 895 (quoting D. Dobbs, Handbook on the Law of Remedies 135 (1973)). In Bowen, the Court held that specific relief, such as recovery of specific property or monies wrongfully taken, could still be awarded against the government even where "money damages" were unavailable. Bowen, 487 U.S. at 893. In the words of the Supreme Court:

-30-

> Our cases have long recognized the distinction between an action at law for damages -- which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation -- and an equitable action for specific relief -- which may include an order providing for the reinstatement of an employee with backpay, or for "<u>the recovery of specific property or monies</u>, ejectment from land, or injunction either directing or restraining the defendant officer's actions."

Id. (quoting <u>Larson</u> v. <u>Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682, 688 (1949)) (emphasis added).

The Court's reasoning in <u>Bowen</u> provides some foundation with which to speculate that Congress's waiver of sovereign immunity for "money recovery" could conceivably be limited to claims for specific relief, such as where a government creditor wrongfully collected funds from a debtor, and the debtor now seeks to have those monies returned. The use of the term "recovery" rather than "damages" suggests that there is property in the hands of the government which originally belonged to appellees and which appellees could "recover."[2] In addition, this interpretation appears to be the most straightforward since specific monetary relief would be the logical remedy in cases where a creditor has

---

[2] A narrow interpretation of "monetary recovery" would also remain truer to the common usage of the term "recovery" to indicate retrieval of something that one formerly possessed. <u>See</u>, <u>e.g.</u>, The <u>American Heritage Dictionary of the English Language</u> (4th ed. 2000) (defining "recover" as "[t]o get back; regain").

improperly recovered a debt that had already been discharged through bankruptcy.

In light of the discussion in Bowen, we cannot say that "money recovery," as used in § 106(a)(3), unambiguously includes monetary damages, when it appears at least equally likely that Congress intended to waive sovereign immunity only with respect to claims for specific relief. The fact that there are "plausible" readings of a statute that do not require waiver of sovereign immunity "is enough to establish that a reading imposing monetary liability on the Government is not 'unambiguous' and therefore should not be adopted," even though the interpretations against waiver "are assuredly not the only readings." Nordic Village, 503 U.S. at 37.

In the end, Congress has not "definitely and unequivocally" waived sovereign immunity under § 106 of the Bankruptcy Code for emotional damages. United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994). We must assume that had Congress meant to waive sovereign immunity for all forms of "monetary relief" or "money damages" specifically, it could have done so. See, e.g., Bowen, 487 U.S. at 896 (refusing to "substitute the words 'monetary relief' for the words 'money damages' actually selected by Congress" in that statute).

Because I believe the foregoing analysis to be sufficient to reach the judgment with which we all agree, I have written separately in this case.